The PROCTER & GAMBLE INDEPEND-
ENT UNION OF PORT IVORY,
N. Y., Plaintiff-Appellee,

v.

The PROCTER & GAMBLE MANUFAC-
TURING COMPANY, Defendant-
Appellant.

No. 61, Docket 27569.

United States Court of Appeals
Second Circuit.

Argued Oct. 23, 1962.

Decided Dec. 10, 1962.

Martin J. Loftus, Newark, N. J., (Sabino J. Berardino, New York City, on the brief), for plaintiff-appellee.

Jack G. Evans, of Dinsmore, Shohl, Barrett, Coats & Deupree, Cincinnati, Ohio (Harold S. Freeman, Cincinnati, Ohio, of counsel; Theodore W. Kheel and Samuel R. Pierce, Jr., of Battle, Fowler, Stokes & Kheel, New York City, on the brief), for defendant-appellant.

Before LUMBARD, Chief Judge, and MOORE and HAYS, Circuit Judges.

HAYS, Circuit Judge.

Plaintiff seeks to compel defendant to arbitrate certain grievances. The district court granted plaintiff's motion for summary judgment. We reverse and grant summary judgment for the defendant.

The plaintiff, a labor union, is the collective bargaining agent for a unit of employees at defendant's Port Ivory plant on Staten Island. The employer and the union entered into a collective bargaining agreement which was effective for the period April 30, 1959 to and including April 30, 1960. The agreement provided for automatic renewal unless notice was given by either party at least sixty days prior to the expiration date. In accordance with the terms of the agreement the Union gave notice more than sixty days prior to April 30, 1960, of its desire to negotiate a new agreement. Negotiations were undertaken and continued for some time. Employer and union agreed to extend the collective agreement for two weeks, May 1 to May 14, 1960. On May 13 the union refused the employer's offer to agree to a further extension. The union did not, until May 13, notify the Federal Mediation and Conciliation Service and the State Mediation Board, as required by Section 8(d) (3) of the National Labor Relations Act (29 U.S.C. § 158(d) (3)). A new agreement was finally reached and became effective on June 23, 1960.

The collective agreement of April 30, 1959-April 30, 1960 contained an arbitration clause[1] which, we may assume, would have covered the grievances for which the union now seeks arbitration. These grievances were submitted to the employer on May 21 and June 7, 1960. The grievance submitted on May 21 arose out of disciplinary measures taken by the employer on May 18 against two employees for their refusal to accept an assignment of overtime work on May 17. The grievance submitted on June 7 concerned the employer's discipline on May 20 of certain employees for walkouts which occurred on May 18 and May 20. Thus the activities on which the discipline was based, the disciplinary measures the propriety of which the union seeks to arbitrate, and the filing of the grievances all occurred in the interval between the termination date of the old agreement and the effective date of the new agreement.

The union demanded arbitration of the grievances and, when the employer refused to arbitrate, brought the present action to compel arbitration.

The issue is whether the employer was bound to arbitrate these grievances either by any agreement to arbitrate existing at the time these grievances arose, or by reason of any duty created by law.

Before we turn to a discussion of that issue it is necessary to consider a subsidiary issue which was raised by appellant.

Appellant argues that summary judgment should not have been granted because there were controverted issues of fact requiring trial.[2] As to one of these issues, i. e. whether the contract continued in effect after May 14, "by action of the parties", an issue with which we will deal later, we have found no

---

1. The arbitration clause is set forth infra note 4.

2. Since in granting summary judgment for appellant we are in a sense giving it even more than it seeks here, it might appear that our result preempts these issues. But if the issues are genuinely controverted the *appellee* has a right to have them tried and summary judgment cannot be granted for appellant. See Fountain v. Filson, 336 U.S. 681, 69 S.Ct. 754, 93 L.Ed. 971 (1949); Prepo Corp. v. Pressure Can Corp., 234 F.2d 700 (7th Cir.); cert. denied, 352 U.S. 892, 77 S.Ct. 132, 1 L.Ed.2d 87 (1956).

genuine controversy since the evidence shows that the contract was not so continued. The other issue involves the claim of the employer that the grievances in question were "settled" in connection with, and as a part of the consideration for, the new collective agreement of June 23, 1960. We find a determination of this issue unnecessary. Since we hold that in any event there was no effective agreement to arbitrate, it is of no consequence whether the grievances were in fact settled or withdrawn.

■ The duty to arbitrate is wholly contractual and the courts have the obligation to determine whether there is a contract imposing such a duty.

"The Congress * * * has by § 301 of the Labor Management Relations Act, assigned the courts the duty of determining whether the reluctant party has breached his promise to arbitrate. For arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." United Steelworkers v. Warrior & Gulf Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960).

Our task is, then, to determine whether at the time these grievances arose there was any agreement to arbitrate grievances.

We hold that the district court was correct in finding that the collective bargaining agreement which contained the applicable arbitration agreement expired by its own terms on April 30, 1960, and that the agreement extending the earlier agreement expired on May 14, 1960. It had, then, already expired before the occurrence of the activities out of which these grievances developed.

■ We reject appellee's argument that the agreement continued in effect by reason of the action of the parties. On May 13, the employer offered to continue the agreement in effect for another limited period. This offer met with a flat refusal from the union. The fact that the employer chose thereafter not to change many of the working conditions which had prevailed under the expired agreement does not tend in any way to establish that that agreement was, or was considered to be, or was treated as still effective.[3] It is perfectly natural and entirely customary that, in the short hiatus which is expected to occur between the expiration of one collective agreement and the negotiation of the next, no great change will be made in the existing conditions. Sometimes, as here, a part of the hiatus is covered by an agreed-upon extension of the terms of the expiring agreement. Where no such extension is negotiated, or where the period of the extension has also expired, there is no ground whatever for considering that the old agreement still governs the relationship of the parties. See Paterson Parchment Paper Co. v. International Bhd. of Paper Makers, 191 F.2d 252 (3d Cir., 1951), cert. denied, 342 U.S. 933, 72 S.Ct. 376, 96 L.Ed. 694, petition for rehearing denied, 342 U.S. 956, 72 S.Ct. 625, 96 L.Ed. 710 (1952); Lorenz-Schneider Co. v. Bakery Union, 208 F.Supp. 77 (E. D.N.Y.1962); International Air Line Pilots Ass'n v. Southern Airways, Inc., (M.D.Tenn.1962) (44 Lab. Cas. ¶17460); Food Handlers Local 425, etc. v. Arkansas Poultry Co-op, Inc., 199 F.Supp. 895 (W.D.Ark.1961).

But the district court held that in spite of the expiration of the old agreement, "the relationship of employer-employee continued," and that one of the "conditions" of the continuing relationship was the right to arbitrate grievances.

■ The right to arbitrate under a collective agreement is not ordinarily a right incident to the employer-employee relationship, but one which is incident to the relationship between employer and union. Under the collective agreement between the parties, it was the union which had the right to take grievances to

3. The employer stated that it would not continue to check off dues, permit use of the bulletin boards or arbitrate grievances.

arbitration, not the individual employees. See Black-Clawson Co. v. International Ass'n of Machinists, 312 F. Supp. 818 (N.D.N.Y.1962) (45 Lab. Cas. ¶17643), aff'd 313 F.2d 179 (2d Cir., 1962); Ostrofsky v. United Steelworkers, 171 F.Supp. 782 (D.Md.1959), aff'd, 273 F.2d 614 (4th Cir.), cert. denied, 363 U.S. 849, 80 S.Ct. 1628, 4 L. Ed.2d 1732 (1960); United States v. Voges, 124 F.Supp. 543 (E.D.N.Y. 1954); Donnelly v. United Fruit Co., 75 N.J.Super. 383, 183 A.2d 415 (Super. Ct.App.Div.1962); Parker v. Borock, 5 N.Y.2d 156, 182 N.Y.S.2d 577, 156 N.E.2d 297 (1959); Cf. Falsetti v. Local Union No. 2026, U.M.W., 400 Pa. 145, 161 A.2d 882, 892 (1960). The agreement provides that "in the event that the arbitration is called for by either party hereto, the Employer and the Union, shall appoint an arbitrator * * *". The wording of the grievance clause as a whole [4] clearly indicates that only the union or the employer can demand arbitration.

██ Moreover the right to arbitrate is in no sense an incident or a "condition" of the employer-employee relationship as

4. "1. The Employer desires that unfairness to its employees shall not exist. A grievance is defined to be any difference between the Employer and Union, or employee or employees covered by this Agreement, as to any matter involving the interpretation or application of any provision of this Agreement (or any matter directly affecting the employee in respect to hours of work, wages or conditions of employment). Such grievances shall be adjusted according to the following procedure:

"Step 1—Any employee or group of employees having a grievance shall first present such grievance directly to his department manager or foreman or his steward or other Union representative who shall present it to the department manager or foreman. If the employee or the Union and the department manager or foreman are unable to make adjustment within two working days, unless by agreement with the steward the time is extended and except for mechanical changes, then

"Step 2—The grievance shall be reduced to writing on a form prepared by the Union and shall be presented by the employee, steward, or his Union representative to the Plant Manager who in turn shall answer in writing within three (3) working days. In the event the grievance is not settled within three (3) working days, then

"Step 3—The grievance shall be presented to the management at the next meeting of the *Union Executive Committee* and the *Division Manager or his representative*. A decision shall be given in writing by the Division Manager or his representative within fifteen (15) working days of the meeting, then

"Step 4—In the event that a grievance having to do with the interpretation or application of any provision of this agreement is not settled in the previous steps,

such a grievance may be submitted to a Board of Arbitration. *In the event that the arbitration is called for by either party hereto, the Employer and the Union shall each appoint one arbitrator within fifteen (15) days after such request.* The two arbitrators so appointed shall select a third arbitrator and the decision of any two of the three arbitrators shall be final and binding *upon the Employer and the Union.* In the event that no agreement can be reached on the selection of the third arbitrator within ten (10) days, the parties shall request the American Arbitration Association to submit a list or lists from which a mutually acceptable third arbitrator may be chosen. The decision of said Board shall be made as soon as possible after the appointment of the third arbitrator.

"2. It is agreed that there shall be no lockout, strike, or stoppage of work pending final disposition of any grievance.

"3. It is further agreed that should any grievance go to arbitration, *the Employer* and *the Union* shall each defray all the cost of its own representative for service upon said Arbitration Board, but that each shall bear half the cost of the expenses and fees of the third member of said Arbitration Board.

"4. All grievances not settled shall be presented to the Arbitration Board within 60 days from the date of the initial presentation of the grievance, if practicable.

"5. The arbitrators shall confine their consideration to the issue or issues submitted in writing *by the Employer and the Union* before the Board of Arbitration convenes, and shall neither add to nor subtract from the written provisions of this Agreement in reaching their decision. (Emphasis added.)"

Collective Agreement, April 30, 1959, Article XI.

such, but depends, in exactly the same degree as does the union's right to arbitrate, on the existence of an agreement to arbitrate. In the absence of such an agreement no employee has the right to compel his employer to arbitrate any matter whatsoever. Thus even if it could be argued that employees had any right to compel arbitration under the collective agreement, which expired on April 30 or May 14, there would be no more reason to hold that that right survived the expiration of the agreement to arbitrate than there would be to hold that the union's right so survived. The attempt to argue for a transfer of the right to arbitrate from union to employees upon the expiration of the collective agreement finds no support whatever in authority or logic.

Zdanok v. Glidden Co., 288 F.2d 99 (2d Cir., 1961), aff'd on other grounds, 370 U.S. 530, 82 S.Ct. 1459, 8 L.Ed.2d 671 (1962), provides no such support. In that case certain seniority provisions of a collective agreement were thought to be prospective in character, that is, they were read to provide for seniority rights which were expected to continue beyond the termination of the collective agreement. Thus, though the agreement involved was for a period of two years, it provided for the survival of rights of rehiring over a period of three years. Seniority was likened in this respect to "vested" pension rights which continue beyond the termination of a collective agreement.

■ The principle laid down in Zdanok has its application to arbitration procedure. In the same sense that Zdanok applies the principle to seniority, the agreement to arbitrate is prospective and the duty to arbitrate survives the termination of the agreement. Grievances which are based upon conditions arising *during the term of the agreement to arbitrate* are arbitrable after that term has ended. This is the real meaning of the cases cited by the appellee. See e. g.,

United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); Potoker v. Brooklyn Eagle, Inc., 2 N.Y.2d 553, 161 N.Y.S.2d 609, 141 N.E.2d 841 (1957). This principle has no application to grievances which arise *after the expiration* of the agreement to arbitrate. To hold that Zdanok suggests otherwise would be to read into that case a requirement not that accrued seniority should be credited, but that new seniority could be acquired after the expiration of the agreement.

Since we hold that Zdanok is inapplicable to the case at bar, we have no occasion to reexamine the principles on which that decision was based.[5] We believe, however, that we should say that Zdanok cannot properly be read to govern situations which are not strictly within the facts there presented. More particularly the case cannot be made to stand in any general way for the survival of contractual obligations during any period beyond the period for which they were expressly undertaken.

We hold, then, that no right of employees to arbitrate survived the expiration of the collective agreement.

The appellee seeks to defend the result reached in the district court by two other arguments which are based upon provisions of the National Labor Relations Act (29 U.S.C. § 151ff.). Before turning to these arguments we consider briefly appellant's related contention that by reason of that Act the controverted grievances are not subject to arbitration.

■ The appellant urges that the activities which are the subject matter of the grievances were arguably unfair labor practices under Section 8 of the National Labor Relations Act (29 U.S.C. § 158). From this it is said to follow that the National Labor Relations Board has exclusive primary jurisdiction, and that arbitration, like the courts, is "preempted". San Diego Building Trades Council v. Garmon, 359 U.S. 236, 79

5. For the position of the Sixth Circuit see Oddie v. Ross Gear & Tool Co., 305 F.2d 143 (6th Cir. 1962).

S.Ct. 773, 3 L.Ed.2d 775 (1959) is cited in support of the proposition.

The contention has been fully answered by the Supreme Court. In Local 174, Teamsters Union v. Lucas Flour Co., 369 U.S. 95, 101, n. 9, 82 S.Ct. 571, 575, 7 L.Ed.2d 593 (1962), that Court said:

"Since this was a suit for violation of a collective bargaining contract within the purview of § 301(a) of the Labor Management Relations Act of 1947, the pre-emptive doctrine of cases such as San Diego Building Trades Council [etc.] v. Garmon, 359 U.S. 236 [79 S.Ct. 773, 3 L.Ed.2d 775], based upon the exclusive jurisdiction of the National Labor Relations Board, is not relevant. See Local 4264, United Steelworkers v. New Park Mining Co., 273 F.2d 352 (C.A. 10th Cir.); Independent Petroleum Workers v. Esso Standard Oil Co., 235 F.2d 401 (C.A. 3d Cir.); see generally Lodge No. 12, [Int'l] District No. 37, Int'l Assn. of Machinists v. Cameron Iron Works, Inc., 257 F.2d 467 (C.A. 5th Cir.); Local 598, Plumbers & Steamfitters Union [Local No. 598] v. Dillion, 255 F.2d 820 (C.A. 9th Cir.); Local 181, Int'l Union of Operating Engineers v. Dahlem Constr. Co., 193 F.2d 470 (C.A. 6th Cir.). As pointed out in Charles Dowd Box Co. v. Courtney, 368 U.S. [502] at 513 [82 S.Ct. 519, 7 L.Ed.2d 483], Congress 'deliberately chose to leave the enforcement of collective agreements "to the usual processes of the law." ' See also H. R.Conf.Rep.No.510, 80th Cong., 1st Sess. p. 52. It is, of course, true that conduct which is a violation of a contractual obligation may also be conduct constituting an unfair labor practice, and what has been said is not to imply that enforcement by a court of a contract obligation affects the jurisdiction of the N.L.R.B. to remedy unfair labor practices, as such. See generally Dunau, Contractual Prohibition of Unfair Labor Practices: Jurisdictional Problems, 57 Col.L.Rev. 52." [6]

The first of what may be called appellee's National Labor Relations Act contentions is that the collective agreement between the parties was extended by reason of the union's failure to give timely notice to the Federal Mediation and Conciliation Service and the State Mediation Board as required by Section 8(d) of the Act (29 U.S.C. § 158(d)). (The notice was given on May 13 and the grievances arose less than thirty days thereafter).

Section 8(d) provides:

"(d) For the purposes of this section, to bargain collectively is the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment, or the negotiation of an agreement, or any questions arising thereunder, and the execution of a written contract incorporating any agreement reached if requested by either party, but such obligation does not compel either party to agree to a proposal or require the making of a concession: *Provided,* That where there is in effect a collective-bargaining contract covering employees in an industry affecting commerce, the duty to bargain collectively shall also mean that no party to such contract shall terminate or modify such contract, unless the party desiring such termination or modification—

6. See also Atkinson v. Sinclair Refining Co., 370 U.S. 238, 245 n. 5, 82 S.Ct. 1318, 1323, 8 L.Ed.2d 462 (1962), where the Court said:

"The union also argues that the preemptive doctrine of cases such as San Diego Bldg. Trades Council [etc.] v. Garmon, 359 U.S. 236, [79 S.Ct. 773, 3 L.Ed.2d 775], is applicable and prevents the courts from asserting jurisdiction. Since this is a § 301 suit, that doctrine is inapplicable. Local 174 [etc.] v. Lucas Flour Co., 369 U.S. 95, 101 n. 9 [82 S.Ct. 571, 7 L.Ed.2d 593]."

"(1) serves a written notice upon the other party to the contract of the proposed termination or modification sixty days prior to the expiration date thereof, or in the event such contract contains no expiration date, sixty days prior to the time it is proposed to make such termination or modification;

"(2) offers to meet and confer with the other party for the purpose of negotiating a new contract or a contract containing the proposed modifications;

"(3) notifies the Federal Mediation and Conciliation Service within thirty days after such notice of the existence of a dispute, and simultaneously therewith notifies any State or Territorial Agency established to mediate and conciliate disputes within the State or Territory where the dispute occurred, provided no agreement has been reached by that time; and

"(4) continues in full force and effect, without resorting to strike or lock-out, all the terms and conditions of the existing contract for a period of sixty days after such notice is given or until the expiration date of such contract, whichever occurs later: The duties imposed upon employers, employees, and labor organizations by paragraphs (2)–(4) of this subsection shall become inapplicable upon an intervening certification of the Board, under which the labor organization or individual, which is a party to the contract, has been superseded as or ceased to be the representative of the employees subject to the provisions of section 159(a) of this title, and the duties so imposed shall not be construed as requiring either party to discuss or agree to any modification of the terms and conditions contained in a contract for a fixed period, if such modification is to become effective before such terms and conditions can be reopened under the provisions of the contract. Any employee who engages in a strike within the sixty-day period specified in this subsection shall lose his status as an employee of the employer engaged in the particular labor dispute, for the purposes of sections 158–160 of this title, but such loss of status for such employee shall terminate if and when he is reemployed by such employer."

▮ The text of Section 8(d) has been set forth in full in order to show the total scheme or plan of that Section. It becomes clear on reading the Section as a whole that its purpose is to provide for a waiting period during which there can be no strike. The requirement of notifying the federal and state mediation services is a subordinate feature of the plan. They are to be notified so that where there is a threat of strike they may have the opportunity of entering into the negotiations and trying to bring about a peaceful settlement.

The language to which appellee points is:

"(4) continues in full force and effect, without resorting to strike or lock-out, all the terms and conditions of the existing contract for a period of sixty days after such notice is given or until the expiration date of such contract whichever occurs later."

But the requirement of paragraph (3) that federal and state agencies be notified is entirely independent of paragraph (4). There is no suggestion in the text that a failure to meet the notice requirements of paragraph (3) will have any effect on paragraph (4). The only notice mentioned in (4) is the 60-day notice of termination.

Moreover the provision does not suggest that failure to comply will constitute a breach of contract, or that the courts are authorized to take over the function of the Board by awarding specific performance of "the terms and conditions of the existing contract." Failure to

comply is an unfair labor practice which the Board may redress by a proper order.

 The passage from the Lucas case which is quoted above indicates that the courts are to administer contract remedies and the Board is to administer the remedies provided under the Act.[7] The fact that the two forums may disagree is not to be accepted as an argument for their not pursuing their separate courses. If it were, the Court would not have rejected the "preemption" doctrine. The possibility of conflicting remedies is the very heart of the doctrine of the Garmon case which the Court holds is inapplicable to contract disputes.[8]

Appellee would have us hold that the employer by refusing to arbitrate committed an unfair labor practice under Section 8(d). But the doctrine of the Lucas case must mean that, just as under § 301 contract remedies are entrusted to the courts, remedies for unfair labor practices under Section 8(d) are exclusively the province of the Board. If here the employer cannot defend itself against a contract remedy on the ground that an unfair labor practice is involved, he cannot be held to a contract remedy on that same ground.

 We agree with the district court that appellee's failure to give timely notice to federal and state agencies did not have the effect of extending the period of the expired contract. Such meagre authority on the point as there is supports this position. In re Eisen, 191 Misc. 662, 77 N.Y.S.2d 676 (Sup.Ct.), appeal dismissed, 84 N.Y.S.2d 698 (App. Div.1948); International Harvester Co., 77 N.L.R.B. 242 (1948); United States Gypsum Co., 90 N.L.R.B. 964 (1950).[9]

7. See International Union of Operating Engineers, etc. v. Dahlem Const. Co., 193 F.2d 470, 473–474 (6th Cir., 1951):

"Moreover, § 158, 29 U.S.C. 29 U.S. C.A. § 158, does not apply to an action for damages under § 185, 29 U.S.C., 29 U.S.C.A. § 185. The two statutes are included in totally separate divisions of the National Labor Relations Act, § 158 being found in Subchapter II—National Labor Relations—and § 185 being included in Subchapter IV—Liabilities of and Restrictions on Labor and Management. Section 158 in its original form was entitled 'Unfair labor practices by employer defined' and included five paragraphs defining unfair labor practices which are written in the present statute. New definitions of unfair labor practices were included in the amended act and approximately two-thirds of § 158 is devoted to such definitions. The paragraphs relied on by the appellant, (d) 1, 2, 3, and 4, were also added to § 158, and the heading of the section is 'Unfair labor practices.' No provisions in § 158 relate in any way to § 185, the heading of which is 'Suits by and against labor organizations—Venue, amount, and citizenship.' The wording of the statutes strongly supports the conclusion that even if the appellant had complied with § 158(d), it would receive no immunity from a suit for damages for breach of contract under § 185.

This conclusion is supported by the legislative history of the amendment to the Labor Management Relations Act made in 1947. The Senate amendments to the Act at one point contained a provision which defined the violation of the terms of the collective bargaining contract as an unfair labor practice. This provision was omitted by the Senate and House in conference, for the reason that 'Once parties have made a collective bargaining contract the enforcement of the contract should be left to the usual processes of the law and not to the National Labor Relations Board.' House Conference Report No. 510, on H.R. 3020, 80th Cong., 1st Sess., 1947, pages 41 and 42. The striking out of the provision which defined violation of the contract as an unfair labor practice is strong evidence that Congress considered breaches of labor contracts to be separate and distinct from unfair labor practices, and intended that they should be separately handled by separate tribunals."

8. The Labor Management Relations Act itself presents in Section 8(b) (4) and § 303 (29 U.S.C. § 158(b) (4) and § 187) a striking possibility of conflicting remedies, a possibility which has already been given reality in at least one case. See United Brick & Clay Workers v. Deena Artware, Inc., 198 F.2d 637 (6th Cir.), cert. denied, 344 U.S. 897, 73 S.Ct. 277, 97 L.Ed. 694 (1962).

9. "As a further ground for finding that the Respondent violated Section 8(a) (5), the General Counsel, in his brief in sup-

Appellee also advances an argument based on the appellant's duty to bargain under the National Labor Relations Act. This argument runs as follows: Even though the collective bargaining agreement expired, the employer could not, unilaterally, and without bargaining to an impasse, change the terms and conditions of employment. One of these unchangeable terms was the provision for arbitration.

We may assume for present purposes that under the National Labor Relations Act a unilateral change in conditions of work which is made without prior bargaining with the union is an unfair labor practice. See National Labor Relations Board v. Katz, 369 U.S. 736, 82 S.Ct. 1107, 8 L.Ed.2d 230 (1962).[10] The union's contention amounts, then, to the charge that the employer's refusal to arbitrate is an unfair labor practice, entirely apart from the existence of any agreement to arbitrate.

■ It seems entirely clear to us that the federal courts cannot enforce a duty to arbitrate on the ground, not that there is any contract to be enforced under Section 301, but that the refusal to arbitrate is an unfair labor practice under Section 8. The National Labor Relations Board has exclusive jurisdiction to prevent unfair labor practices (National Labor Relations Act, § 10, (29 U.S.C. § 160)), and, on the other hand, the jurisdiction of the federal courts apart from the obligation of the courts of appeal to review orders of the Board, is confined to "suits for violation of contracts between an employer and a labor organization" (Labor Management Relations Act, § 301 (29 U.S.C. § 185)). Appellee does not, under this head, claim any breach of contract. The federal courts are without competence to pass upon its claim of unfair labor practice.

■ We hold, therefore, that the employer was under no obligation to arbitrate the grievances which the union has submitted.

■ We reverse the order granting summary judgment for the plaintiff. Since we hold that there was no triable issue of fact, and that defendant, although it made no cross motion, was entitled to summary judgment, summary judgment will be entered for defendant. See Local 33, Int'l Hod Carriers Union v. Mason Tenders District Council, 291 F.2d 496, 505 (2d Cir., 1961).

port of the Intermediate Report, urges that the Respondent had failed to comply with the 60-and 30-day notice requirements of Section 8(d) (1) and (3), and that the Respondent was therefore required to give continuing effect to the July 11, 1947 agreement with the Union. We find this contention to be without merit. The Union gave the Respondent timely notice of its desire to terminate the agreement. In any event, Section 8(d) was designed to provide a cooling-off period during which a labor organization is forbidden to strike to enforce its demands to modify or terminate a contract. As there was no strike in this case, Section 8(d) is inapplicable." 90 N.L.R.B. at 968 n. 11.

10. In fact it appears that the Board does not require the employer to refrain from abandoning arbitration without collective bargaining at the termination of an agreement containing an arbitration clause. See Bethlehem Steel Company, 133 N.L.R.B. 1347 (1961). The supplemental decision and order of the Board, 136 N.L.R.B. No. 135, modified the previous decision with respect to grievance procedure but not with respect to arbitration.