Burke, J.
The union appeals from a decision of the Appellate Division which affirmed, by a divided court, an order of the Special Term staying arbitration.
The main issue presented for review is whether the courts below were correct on the facts of this case in reaching the question of whether or not the parties had followed the steps preliminary and necessary to the final arbitration step required by a collective bargaining agreement.
The parties have conceded that this case and the contract involved in it are within the purview of our national labor legislation, and they have presented their arguments in that posture. Since the arbitration clause is part of a collective bargaining contract, its interpretation and enforcement come within the terms of subdivision (a) of section 301 of the Labor Management Relations Act (61 U. S. Stat. 156 [1947]; U. S. Code [1958 ed.], tit 29, § 185, subd. [a]). Because of this legislation such cases are not. *383 dealt with as a matter of State contract law and, although State courts have jurisdiction in such cases as this, the Federal law must be followed, and ‘ ‘ incompatible doctrines of local law must give way to principles of federal labor law.” (Teamsters Local 174 v. Lucas Flour Co., 369 U. S. 95, 102 [1962].)
While it is Federal law that we apply in this case in reversing the orders made below which prevented arbitration, we point out that on this record and under the law of this State we would treat collective bargaining contract arbitration with like reasoning, and would reach the same result were we to apply our law. These orders must be reversed as we said because the procedural issue raised by the company is plainly arbitrable and the courts below should not have considered it.
The company and the union are parties to a collective bargaining agreement. One of the agreement’s many sections deals with the procedure to be followed between the parties for the resolution of grievances. This section, No. 26, provides: “ 26. Grievances and Arbitration. There shall be no strikes, suspensions, or slowdowns of work during the term of this agreement, and all grievances, including the question whether an employee has been discharged for just cause, and all disputes with respect to the interpretation of this agreement shall be dealt with as follows: If the Union and the Employer or his designated representative fail to come to an agreement, then the matter in controversy shall be referred to a committee of Arbitration, which shall consist of one person selected by the Employer, and one person selected by the Uuion, who shall proceed to arbitrate the matter within three (3) days after the dispute arises. If such committee is unable to agree on a decision of the dispute or controversy within five (5) days after the submission thereof, then such dispute shall be submitted for arbitration before the Arbitration Authority for the Trucking Industry of the City of New York, whose decision shall be final and binding upon the parties.”
The union was informed that one Louis Bostic was not receiving wages equal to those called for in the agreement. The union communicated with the company on November 7, 1962, and a meeting was held on November 13, at which the company’s secretary, Mrs. Rosen, was present, with two union officers, and also Bostic. The company’s position was that Bostic was not *384 employed by it but by another company that was carrying on its business at the same address. For this reason the company refused the claim.
On December 4, 1962 counsel for the union served the company with a copy of a “ Bequest fob. Abbitbation ’ ’ of alleged violations of the agreement, to be held before the impartial chairman of the Trucking Industry Arbitration Authority.
The company asserts that the meeting of November 13 was merely a meeting to discuss the claim and its possible settlement, and that, at most, it amounted to the first step of the grievance procedure set up by the agreement. The company claims that it did not consider the November 13 meeting to be that of a “ Committee of Arbitration” and that it did not designate a representative on a “Committee of Arbitration ”. It views this missing step as the fatal lack of a necessary condition precedent to arbitration before the Authority. This is the view taken by Special Term and by the majority of the Appellate Division.
The union alleges error in the lower courts’ ruling against the timely propriety of arbitration. It also contends ‘ ‘ further attempts to activate a committee would be fruitless Beyond this, however, it is the union’s position that the courts should never have passed upon the question of compliance with the preliminary steps to arbitration. It asserts that this issue, along with the merits of the grievance claim, may only be considered by the arbitrators.
This last contention is correct as it is supported by a body of decisional law developed in the Federal courts. It is now a familiar rule that, where a labor agreement contains an arbitration provision, the presumption is that questions of arbitrability are for the arbitrator (see Steelworkers v. Warrior & Gulf Co., 363 U. S. 574 [1960]; Steelworkers v. American Mfg. Co., 363 U. S. 564 [1960]; Steelworkers v. Enterprise Corp., 363 U. S. 593 [1960]). The principles which have given rise to this presumption as to questions of substantive arbitrability apply likewise to procedural issues. (See John Wiley & Sons v. Livingston, 376 U. S. 543 [1964]; Rochester Tel. Corp. v. Communications Workers, 340 F. 2d 237 [2d Cir., 1965]; Carey v. General Elec. Co., 315 F. 2d 499, 501-504 [2d Cir., 1963], cert. den. 377 U. S. 908 [1964].) The court, of course, has the function in the first instance of ascertaining whether there is a question, *385 whether it be of procedure or of substance, which requires determination on the merits by the arbitrators (see Steelworkers v. Warrior & Gulf Co., 363 U. S. 574, supra). The court’s function, however, is limited to finding that a dispute, whether tenable or not, does in fact exist. (See CPLR 7501; see, also, Steelworkers v. American Mfg. Co., 363 U. S. 564, 566-567, supra.) Where the court so finds, then, it will be for the arbitrator and not for the court to determine the merits of the dispute itself. In the last analysis, arbitrations are the result of agreements between the parties and they draw their essence from those agreements. It is only where the parties have employed language which clearly rebuts the presumption of arbitrability, e.g., by stating that an issue either as to procedure or as to substance is not to be determined by arbitration, that the matter may be determined by the courts. In the absence of such unmistakably clear language, as here, the matter is sent to the arbitrator for his determination on the merits. (See Steelworkers v. Enterprise Corp., 363 U. S. 593, supra [1960].)
So much for the general principles—the leading opinion defining the Federal rule applicable to the issue of ‘ ‘ procedural arbitrability ’ ’ was handed down by the Supreme Court early last year. (John Wiley & Sons v. Livingston, 376 U. S. 543, supra [1964].) The court was presented with a question quite similar to the one in the present case and affirmed an order to arbitrate. The opinion indicated that the positions of parties on these procedural matters cannot meaningfully be considered without a full examination of the substantive issues involved in the claim presented for arbitration. The court stated:
“ It would be a curious rule which required that intertwined issues of ‘ substance ’ and ‘ procedure ’ growing out of a single dispute and raising the same questions on the same facts had to be carved up between two different forums, one deciding after the other. Neither logic nor considerations of policy compel such a result.
‘' Once it is determined, as we have, that the parties are obligated to submit the subject matter of a dispute to arbitration, ‘ procedural ’ questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator.” (376 U. S., p. 557.)
*386 Since Wiley was decided its broad language has been referred to several times by the Federal courts. (Western Automatic Mach. Screw Co. v. International Union, 335 F. 2d 103 [6th Cir., 1964]; Bevington & Basile Wholesalers v. Local 46, 330 F. 2d 202 [8th Cir., 1964]; Avco Corp., Electronics & Ordnance Div. v. Mitchell, 336 F. 2d 289 [6th Cir., 1964]; Amalgamated Assn. v. Trailways of New England, 232 F. Supp. 608 [Dist. Ct. Mass., 1964].) In the light of these cases, questions of timeliness and compliance with step-by-step grievance procedures, prior to formal and final binding arbitration, are questions of “ procedural arbitrability ”. Now it is clear that such questions must be left to the arbitrator.
Even if the issue involved was not solely one of procedure, a reversal still must be ordered. The union contended that the word “ arbitration ”, as used in the first step in the arbitration provision, was somewhat inartistically used in the sense of mediation and that, when the meeting between the parties took place on November 13, 1963, the first step of the arbitration provision had been fully complied with. The company, on the other hand, replied that the term “ arbitration” was used in its technical sense and that in fact the arbitration committee had never convened. Thus it argued that the first step of the arbitration provision had not been carried out by the appellant union. These are “ disputes with respect to the interpretation of this agreement ”.
The company, pointing to Wiley (supra), contends that the doctrine of that case must be limited to the procedural questions which “ grow out of the dispute ” and that the questions here posed are independent of such dispute. This argument ignores the fact that the procedural questions also raise issues of interpretation which are plainly arbitrable.
Wiley, moreover, may not be so distinguished; indeed, a similar attempt to limit its decision was recently rejected. (See Rochester Tel. Corp. v. Communications Workers, 340 F. 2d 237, supra.) In that case, the court, declaring that it did not read the Supreme Court’s opinion in Wiley “ to say that procedural defenses fall to the arbitrator only if factually related to the merits of the dispute ”, referred to its earlier decision in Carey v. General Elec. Co. (315 F. 2d 499, supra) as being “ irreconcilable with any such view ” (340 F. 2d, p. 239; see, also, Note, *387 Procedural Arbitrability under Section 301 of the LMRA, 73 Yale L. J. 1459 [1964]). The broad language of the arbitration clause in this case, including as it does “ all grievances ” and ‘ ‘ all disputes with respect to the interpretation of this agreement ”, indicates that procedural, as well as substantive questions, were to be arbitrated.
Thus, were it necessary to find questions of contract interpretation intertwined in the procedural issues, this ease would fit within the rule’s requirements. But, as we have indicated above, the rule which we have recognized and followed leaves all procedural questions for the arbitrator to consider along with the substantive issues involved in the arbitration claims. As we have pointed out, the application of the law of our State would yield the same result as under the Federal rule, for our reasoning would be the same in dealing with this arbitration clause in a collective bargaining contract. Such a rule would not be applicable to all situations in which a contract arbitration clause was before the courts, the doctrine of the present case arising solely from the special economic circumstances which surround the institution of collective bargaining. As pointed out in the case of Matter of Board of Educ. (Heckler Elec. Co.) (7 N Y 2d 476 [1960]), the rule with regard to commercial arbitration situations is quite different.
The order of the Appellate Division should be reversed, with costs in all courts.
Chief Judge Desmond and Judges Dye, Fuld, Scileppi and Bergan concur with Judge Burke ; Judge Van Voorhis dissents and votes to affirm.
Order reversed, with costs in all courts, and matter remitted to Special Term for further proceedings in accordance with the opinion herein.