Scileppi, J.
Petitioner-respondent (G. E. Howard & Co.), a partnership operating a wholesale grocery business, entered into a collective bargaining agreement with respondent-appellant (the Union), as representative of certain of its employees. That contract provided under the caption grievance and arbitration :
“ Should any dispute arise between the Employer and an Employee, or the Employer and the Union concerning the application or interpretation of any provision of this Agreement or concerning any term or condition of employment, or otherwise, a representative of the Employer and a representative of the Union shall attempt to adjust the controversy between themselves.
"In the event that they are unable to adjust same, the dispute shall, within two (2) days after the request of either party, be submitted to arbitration as hereinafter provided in Section II.”
In September, 1968 John A. Riley, the 71-year-old surviving active partner, decided to retire, terminate the partnership and liquidate the business. The employees were notified of their employer’s intention to liquidate and in the course of ensuing negotiations demanded severance pay. Petitioner-respondent, contending that the bargaining agreement made no provision for severance pay,[1] refused to accede to the Union’s demands, whereupon the latter filed charges of unfair labor practices with *288 the National Labor Relations Board. Upon investigation of the alleged violation under section 8 of the National Labor Relations Act (U. S. Code, tit. 29, § 158 [1935]) the board, concluding that the evidence adduced failed to support the allegations of the charge, refused to issue a complaint.
By notice and demand dated November 26, 1968, respondent-appellant sought arbitration of the alleged ‘ ‘ dispute concerning the refusal of the company to grant severance pay to employees upon the discontinuance of its business operations.” Thereupon, petitioner-respondent instituted a proceeding in the Supreme Court, Orange County, pursuant to CPLR 7503, for a stay of arbitration. The trial court, noting that the contract on its face makes no provision for severance pay, concluded that the agreement itself could not serve as a predicate for such claims, and granted a permanent stay. On appeal, the Appellate Division affirmed, two Justices dissenting, and it is from that order which respondent-appellant prosecutes the instant appeal.
We have before us the question of whether the Appellate Division was-correct in affirming the order of Special Term granting a permanent stay of arbitration, despite the presence of a broad arbitration clause. While the question has generally been attended by considerable difficulty, particularly in cases involving commercial matters (see, e.g., Matter of ITT Avis v. Tuttle, 27 N Y 2d 571; Matter of Riverdale Fabrics Corp. [Tillinghast-Stiles Co.], 306 N. Y. 288; Matter of Uddo [Taormina], 21 A D 2d 402), which mandate an unequivocal expression of intent to submit such matters to arbitration (Matter of ITT Avis v. Tuttle, supra', Matter of Riverdale [Tillinghast-Stiles Co.], supra), we have encountered substantially less difficulty when confronted by arbitration clauses in collective bargaining agreements, where the party seeking arbitration is aided by the presumption of arbitrability under Federal law (Steelworkers v. Warrior & Gulf Co., 363 U. S. 574, 582-583; see Teamsters Local v. Lucas Flour Co., 369 U. S. 95, 102; U. S. Code, tit. 29, § 185, subd. [a]; Matter of Long Is. Lbr. Co. [Martin], 15 N Y 2d 380, 385).
Invoking the well-settled rule that one can be compelled to arbitrate only those matters which he has by contract agreed to arbitrate, petitioner-respondent, as did the lower courts, relies *289 heavily upon the fact that the agreement itself contains no provision for arbitration of disputes relating to severance pay. While we have consistently held that “ [t]he intent must be clear to render arbitration the exclusive remedy ’ and have assiduously sought to insure that ‘ ‘ parties * * * not be led into arbitration unwittingly through subtlety ” (Matter of Riverdale Fabrics Corp. [Tillinghast-Stiles Co.], supra, at p. 291), that policy, pursuant to the Supreme Court mandate, as expressed in Teamsters Local v. Lucas Flour Co. (supra), has been judiciously relaxed by this court in matters relating to the construction of arbitration clauses found in collective bargaining agreements (Matter of Fitzgerald [General Elec. Co.], 19 N Y 2d 325, 329; Matter of Long Is. Lbr. Co. [Martin], supra, at p. 385). Inasmuch as we are presently concerned with an industry affecting interstate commerce as defined in title 29 (U. S. Code, tit. 29, § 142, subd. [1]), all questions arising under the collective bargaining agreement are to be determined under Federal law (Matter of Fitzgerald [General Elec. Co.], supra, at p. 329; Matter of Long Is. Lbr. Co. [Martin], supra, at p. 385).
As noted above, arbitration is essentially a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit (see Matter of Riverdale Fabrics Corp. [Tillinghast-Stiles Co.], supra, at p. 291; Matter of ITT Avis v. Tuttle, supra, at p. 571). However, to be consistent with Federal policy favoring industrial self-regulation in labor disputes, and in deference to the Supreme Court mandate which demands that we accede to that policy (see Steelworkers v. Enterprise Corp., 363 U. S. 593; Steelworkers v. Warrior & Gulf Co., supra; Steelworkers v. American Mfg. Co., 363 U. S. 564; see, also, Matter of Fitzgerald [General Elec. Co.], supra; Matter of Long Is. Lbr. Co. [Martin], supra), this court has limited the judicial function to determining whether the recalcitrant party did agree to arbitrate the grievance (Matter of Fitzgerald [General Elec. Co.], supra; Matter of Long Is. Lbr. Co. [Martin], supra). Indeed, unlike those cases involving matters of a commercial nature, where we have required a clear expression of an intent to submit the matter to arbitration, this court in construing collective bargaining agreements has held that “ only where the parties have employed *290 language which clearly rebuts the presumption of arbitrability,” e.g., explicitly excluding a certain matter from arbitration, may the matter be held nonarbitrable and thus subject, in the final analysis, to judicial determination (Matter of Long Is. Lbr. Co. [Martin], supra, p. 385).
Quite clearly, therefore, both the Federal cases and the decisions of this court have repeatedly distinguished between judicial determination of the merits of a particular controversy, which in the absence of an exclusionary provision has been universally proscribed, and judicial consideration of the threshold question of whether the dispute is within the terms of the agreement, which, of course, has been approved, if not actually encouraged (see e.g., Steelworkers v. Warrior & Gulf Co., supra; Matter of Uddo [Taormina], supra, at p. 405). Significantly, where the court so finds, it is for the arbitrator and not for the court to determine the merits of the dispute itself (see Matter of Long Is. Lbr. Co. [Martin], supra, at p. 385).
Given the present Federal policy of promoting industrial stabilization through collective bargaining, such an approach is clearly warranted. Nor is this “preferential” distinction, between general commercial matters and collective bargaining agreements without sound reason in fact. The harsh realities, indeed the ever-present threat of industrial strife dictate such a policy. ‘ ‘ A collective bargaining agreement is an effort to erect a system of industrial self-government. When most parties enter into contractual relationship they do so voluntarily, in the sense that there is no real compulsion to deal with one another, as opposed to deal with other parties. * * * The choice is generally not between entering or refusing to enter into a relationship, for that in all probability pre-exists the negotiations. Bather it is between having that relationship governed by an agreed-upon rule of law or leaving * * * every matter subject to a temporary resolution dependent solely upon the relative strength, at any given moment, of the contending forces.” (Steelworkers v. Warrier & Gulf Co., supra, at p. 580.)
These factors have an immediate relevance' to the resolution of the case before us. Here we are concerned with a provision which provides that in the event of a dispute arising between the employer and the union concerning the application or inter *291 pretation of any provision of the agreement, or concerning any term or condition of employment, or otherwise, either of the parties (i.e., the employer or union) in the absence of a bilateral adjustment, shall submit the controversy to arbitration. The terms of the provision are pervasive, as it obviously contemplates the arbitration of all disputes arising out of the employment relationship itself. And, though lacking any specific reference to the question of severance pay, that clause would seem clearly to include such a dispute. By staying the arbitration proceeding herein on the ground that the collective bargaining agreement between the parties contained no provision relating to severance pay, the courts below improperly reached the merits of the dispute. As Justice Hopkins noted in his dissenting opinion below “ [t]he absence of a provision for severance pay is relevant to the disposition of the employees ’ ultimate rights thereto, but not to the question of the forum in which that question is to be decided ” (33 A D 2d 1045, 1046). We agree with that conclusion and would add only that while the resolution of the dispute is properly left to the arbitrator, the mere fact of arbitrability is no more persuasive of one outcome or another, but controls only as to the threshold question of the appropriate forum.
Though we need not belabor the point, it is well to note that the nature of the collective bargaining agreement itself compels such deference. The compulsion to reach an agreement, compounded by the myriad factors to be considered, renders the reduction to writing of all matters virtually impossible. As noted time and time again, however, the collective bargaining agreement attempts to govern the entire employer-employee relationship. Accordingly, under general rules of contract law the failure to specifically refer to some matters should not, and in our opinion cannot, be said to render the matter nonarbitrable. To the contrary, arbitration of a “ particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute ” (Steelworkers v. Warrior & Gulf Co., supra, at pp. 582-583).
In deciding that the issue of severance pay was nonarbitrable since it was not specifically provided for in the collective bargaining agreements, the courts below failed to give effect to the *292 plain meaning of the language employed by the parties. The arbitration clause is not restricted to disputes concerning interpretation or construction of the agreement. Bather, it calls for arbitration of all disputes, whether arising out of the agreement or concerning any term or condition of employment, or otherwise. The termination of the employer-employee relationship surely concerns “ any term or condition of employment ”, and as the question of severance pay may well be incidental to that event, it is well within the meaning of that expression.
Accordingly, as the matter should have been permitted to proceed to arbitration, the order of the Appellate Division should be reversed, with costs and the motion for a stay of arbitration denied.
Chief Judge Fuld and Judges Burke, Bergan, Breitel, Jasen and Gibson concur.
Order reversed, with costs, and matter remitted to Special Term for further proceedings in accordance with the opinion herein.

. The collective bargaining agreement contains numerous articles relating to wages and compensation. Listed, in seriatim:
Article II sets forth the minimum rates of pay and refers to Schedule “ A ” which contains two closely-typed pages relating to all kinds of compensation.
Article III relates to overtime pay on certain holidays.
Article IV provides for paid vacations.
Article V provides for sick and disability payments.
Article VI provides for payment due to injury on the job.
Article VIII establishes welfare benefits.
Article XII requires compliance with workmen’s compensation, social security and unemployment insurance laws.
Article XIII requires compliance with wage and hour laws.
Significantly, in none of the listed articles and in no other article of the agreement is provision made either directly or indirectly for the payment of “ severance pay.”