**TRANS WORLD AIRLINES, INC.,**
Plaintiff,

v.

**Charles W. BEATY et al.,**
Defendants.

**No. 71 Civ. 3533 (JMC).**

United States District Court,
S. D. New York.

Oct. 16, 1975.

---

Poletti, Freidin, Prashker, Feldman & Gartner, New York City (Herbert Prashker, Kim Ebb, Lawrence A. Katz, New York City, of counsel), for plaintiff.

O'Donnell & Schwartz, New York City (Asher W. Schwartz, New York City, of counsel), for defendants.

## OPINION

CANNELLA, District Judge:

Trans World Airlines' petition for a permanent stay of arbitration under the New York Civil Practice Law and Rules §§ 7502, 7503 and for a declaratory judgment is hereby granted.

## JURISDICTION

Jurisdiction in this case is founded upon diversity of citizenship and the Railway Labor Act (RLA), 45 U.S.C. § 151–188.

## FACTS

The Court finds and the parties have, for the most part, agreed that the factual background is as follows. On June 21, 1966, Trans World Airlines (TWA) and the Flight Engineers International Association, AFL–CIO (FEIA), the then recognized collective bargaining representative under the RLA for TWA's Flight Engineers, entered into an agree-

ment in settlement of a dispute with respect to the crew complement on jet aircraft. That agreement (hereinafter referred to as the Crew Complement Agreement) obligated TWA (1) to offer to all TWA employees then classified as A and A1 Flight Engineers the prior right as against other flight crew members to bid for and occupy all flight engineer positions required by TWA's operations until the Engineer's retirement, voluntary resignation or discharge for cause, and (2) to enter into an individual agreement with each Flight Engineer to that effect. At the time the Crew Complement Agreement was entered into, each of the defendants herein was employed by TWA as an A Flight Engineer.

In August, 1966, TWA and FEIA agreed upon the form of the individual agreements. The pertinent sections of the agreement are as follows:

NOW THEREFORE, in consideration of the mutual provisions hereinafter set forth and of the mutual promises set forth by and on behalf of the Company and Flight Engineer in the aforesaid Agreement of June 21, 1962, and in consideration of past services rendered, it is agreed:

1. So long as the Company includes, or is required by law or federal regulation to include as members of any of its cockpit flight crews more than two airmen, and one or more of such airmen is assigned to perform the flight engineering function . . ., the Company agrees that it will offer to Flight Engineer the prior right as against flight crew members other than flight engineers to bid for and occupy any flight engineer positions required by the Company's operations. . . .

2. This Agreement shall survive the expiration of the current and any future collective bargaining agreement between the Company and the Association . . . and shall continue in *full force* and *effect* until Flight Engineer's retirement, voluntary resignation or discharge for cause.

. . .

. . . . . .

5. In the event that the Company threatens to sign any agreement or to take any action which denies or will, immediately or in the future, directly result in the denial of Flight Engineer's prior right to bid for and occupy the flight engineer's position, as provided herein and in the aforesaid Agreement of June 21, 1962, or which modifies, varies from, or is inconsistent therewith, or if the Company has signed such an agreement or has taken such action, Flight Engineer shall have the right to assert his objection to the Company by notice in writing by registered mail or by telegram. The Company shall reply to said objection within four (4) calendar days by registered mail or telegram. If Flight Engineer deems said reply to be unsatisfactory, he may, within four (4) calendar days, submit his said objection to Nathan Feinsinger or if he is unable to serve, to James C. Hill, as arbitrator. The said arbitrator shall immediately communicate with the Company and Flight Engineer for the purpose of inquiring as to the nature and merit of Flight Engineer's objection. If, following such inquiry the arbitrator believes that in order to preserve Flight Engineer's right as herein defined it is necessary to direct the Company to refrain from taking the action objected to pending a full hearing on Flight Engineer's objection, he shall have the authority to do so. The arbitrator shall in any event schedule a hearing on Flight Engineer's objection within four (4) calendar days following receipt thereof, and shall render his de-

cision thereon not later than four (4) calendar days thereafter.

.    .    .    .    .    .

Between April 1963 and October 1963, all of the defendants herein, then employed as Flight Engineers, signed individual agreements with TWA containing the above provisions.

During 1966 and 1967 each of the defendants voluntarily bid for and was assigned to Pilot First Officer Training and upon satisfactory completion of that training, each was assigned to a position as a Pilot First Officer. Subsequently, between August 1968 and March 1970, each defendant entered training for upgrading to the position of TWA Captain.

At the time each defendant was trained for and assigned to a position as Pilot First Officer, and voluntarily accepted assignment to training for upgrading to Captain, he was aware of TWA's long-standing practice of discharging Pilot First Officers who failed to complete captain's training satisfactorily. In fact, TWA has never allowed a pilot to remain in its employ as a flight crew member after he has failed to successfully complete training for TWA Captain. Between June 3, 1969 and May 13, 1971, TWA determined that each defendant had failed to complete captain's training satisfactorily and as was its policy, gave the defendants the opportunity either to resign or be discharged.

After many of the defendants submitted grievances to the Systems Board of Adjustments pursuant to a grievance procedure established under the Railway Labor Act, seventeen of the defendants informed TWA by letter that it had violated their individual agreements by refusing to assign them to Flight Engineer positions subsequent to their failure to complete captain's training successfully, thereby denying their prior right to bid for and occupy that position. The letters

also requested arbitration of those claims pursuant to the terms of the individual agreements. TWA rejected the requests for arbitration and thereafter defendants served notice upon TWA of their intention to demand arbitration of their claims. TWA now brings this action to stay such arbitration. It argues that no agreement to arbitrate presently exists between the parties in that the individual agreements terminated upon the defendants' discharges. Defendants, on the other hand, maintain that the entire matter should be submitted to arbitration, including the threshold issue of the existence of an agreement to arbitrate. The trial of this cause was had before the Court, sitting without a jury, on December 2, 1974.

## DISCUSSION

■■■ The initial question presented by the instant case is whether the Court or the arbitrator properly determines whether the parties must arbitrate the grievance presented. Whether or not an employer is bound to arbitrate is normally a threshold matter to be determined by the court on the basis of the contract entered into by the parties. *Operating Engineers Local 150 v. Flair Builders, Inc.,* 406 U.S. 487, 491–92, 92 S.Ct. 1710, 32 L.Ed.2d 248 (1972); *John Wiley & Sons v. Livingston,* 376 U.S. 543, 546–47, 84 S.Ct. 909, 11 L.Ed. 2d 898 (1964); *Atkinson v. Sinclair Refining Co.,* 370 U.S. 238, 241, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962); *International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, U. A. W. v. International Telephone and Telegraph Corporation, Thermotech Division,* 508 F.2d 1309 (8th Cir. 1975); *Procter & Gamble Independent Union v. Procter & Gamble Mfg. Co.,* 312 F.2d 181, 184 (2d Cir. 1962), *cert. denied,* 374 U.S. 830, 83 S.Ct. 1872, 10 L.Ed.2d 1053 (1963).[1] Arbitration is a

---

1. Although the individual agreements all contain the following provision

8. This agreement shall be deemed to have been executed and delivered in the state

matter of contract and a party cannot be required to submit any dispute to arbitration that he has not agreed to have arbitrated. *Gateway Coal Co. v. United Mine Workers of America,* 414 U.S. 368, 374, 94 S.Ct. 629, 38 L.Ed.2d 583 (1974); *United Steelworkers of America v. Warrior & Gulf Nav. Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). Consequently, when a claim is made that an agreement containing an arbitration clause has terminated, that issue is to be resolved judicially as a matter of contract law. *International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, U. A. W. v. International Telephone and Telegraph Corp., Thermotech Division,* 508 F.2d 1309, 1313 (8th Cir. 1975); *Oil, Chemical & Atomic Workers Local 7–210 v. American Maize Products Co.,* 492 F.2d 409 (7th Cir.), *cert. denied,* 417 U.S. 969, 94 S.Ct. 3173, 41 L.Ed.2d 1140 (1974); *Procter & Gamble Independent Union v. Procter & Gamble Mfg. Co.,* 312 F.2d 181, 184 (2d Cir. 1962), *cert. denied,* 374 U.S. 830, 83 S.Ct. 1872, 10 L.Ed.2d 1053 (1963).

■ An exception to the general rule, which defendants claim is applicable here, exists where the parties have agreed to arbitrate the issue of contract termination. *See, e. g., Electrical Workers Local No. 4 v. Radio Thirteen-Eighty, Inc.,* 469 F.2d 610 (8th Cir. 1972); *Winston-Salem Printing Pressmen Union v. Piedmont Publishing Co.,* 393 F.2d 221 (4th Cir. 1968). However, there is no provision for arbitration of the issue of contract termination in the agreements before us. The arbitration clause in the individual agreements is limited to disputes arising from a threat

to or denial of defendants' "prior right" to Flight Engineer positions, and is not broad enough to manifest an intention that termination be decided by the arbitrator. "Where the assertion . . . is that the parties excluded from court determination not merely the decision of the merits of the grievance but also the question of its arbitrability, vesting power to make both decisions in the arbitrator, the claimant must bear the burden of a clear demonstration of that purpose." *United Steelworkers of America v. Warrior & Gulf Nav. Co.,* 363 U.S. 574, 583 n. 7, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960). Defendants have not done so in this case.

■ Defendants present another argument in favor of submitting the question of arbitrability to the arbitrator. They contend that since a determination of the arbitrability of the grievance depends in this case upon facts identical to those relevant to a decision on the merits of the grievance, the entire matter should be submitted to arbitration. We cannot agree. The court is not relieved of its duty to decide whether an arbitrable dispute exists merely because there is an alleged identity of issues involved in the merits of the grievance and the question of arbitrability. *Engineers Association v. Sperry Gyroscope Co.,* 251 F.2d 133, 137 (2d Cir. 1957), *cert. denied,* 356 U.S. 932, 78 S.Ct. 774, 2 L.Ed.2d 762 (1958).

■ Having determined that it is the court's province to decide whether the parties have in fact agreed to arbitrate, the Court turns its inquiry to the question of whether the parties herein entered into a contract providing for the

---

of New York and shall be construed and enforced according to the laws of the State of New York, and all provisions thereof shall be administered according to the laws of such state.

the national labor policy requires that the issues herein be governed by federal law. *Cf. Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 451–454, 77 S.Ct. 912, 1 L.Ed.2d

972 (1957). In any event, under the laws of New York the instant arbitration agreement would be treated with "like reasoning." *Long Island Lumber Co. v. Martin,* 15 N.Y.2d 380, 383, 259 N.Y.S.2d 142, 207 N.E.2d 190 (1965); *see also G. E. Howard & Co. v. Daley,* 27 N.Y.2d 285, 317 N.Y.S.2d 326, 265 N.E.2d 747 (1970).

arbitration of the claimed grievances. It should be noted that we are not here concerned with the scope of an arbitration clause, thereby requiring the application of a presumption in favor of arbitrability, *United Steelworkers of America, supra,* but rather, we are concerned with the *existence* of an agreement to arbitrate.

The individual agreements provided for arbitration of any claim by a Flight Engineer with respect to his prior right to bid for and occupy a Flight Engineer position to which TWA had not adequately responded. By their terms, the agreements, including the arbitration clauses, were to expire upon each Flight Engineer's retirement, voluntary resignation or discharge for cause. The Flight Engineers argue that since a discharge[2] is the ultimate denial of their prior right to bid for and occupy a Flight Engineer position, it should be subject to the arbitration agreement. They contend that if the agreements terminate on discharge and such an action is not arbitrable, the protection bargained for in the Crew Complement Agreement and the individual agreements, is illusory. Therefore, the crucial question for the Court becomes whether the parties agreed to arbitrate a claim that a discharge for cause was a denial of a Flight Engineer's prior right with respect to a flight engineer assignment. The Court finds that they did not.

The individual agreements carefully specify the conditions under which they would survive. Discharge for cause was not such a condition. In fact, such a discharge was a situation which would cause the termination of the agreement. If the defendants herein were discharged for cause following their unsuccessful attempt to be upgraded to the position of TWA Captain, there was no agreement to arbitrate in existence when they subsequently requested arbitration. Consequently, TWA could not be required to submit to arbitration of the alleged grievances.

The defendants take the position that "if the Individual Agreement had not stated that it terminated upon his discharge, each of the defendants would undoubtedly have been before the individual arbitrator to decide whether his prior right was violated under the Individual Agreement by his discharge and replacement by a pilot." Memorandum on behalf of Defendants, pp. 14–15. But that is precisely the point. The agreements between TWA and the Flight Engineers *did* so state. The Court therefore concludes that the parties did not agree to arbitrate a claim that a Flight Engineer's discharge for cause was a denial of his "prior right" to a Flight Engineer position.

This reasoning will not result in the loss of the Flight Engineers' bargained for protection. The individual agreements and the commitments to arbitrate contained therein do not terminate upon any discharge, but only upon a discharge for cause. The parties agreed that the Flight Engineers would maintain their prior right to bid for and occupy Flight Engineer positions, and their right to arbitrate any claims arising therefrom, only until they were discharged for cause.

■ ■ Having reached this conclusion, the only issue remaining for judicial resolution is whether under the present circumstances there has been a dis-

---

2. Although defendant Carr was not discharged but was "allowed" to resign on April 30, 1970, all defendants are herein treated as if they had been discharged. The analysis and result is not changed thereby. It may even be argued that the defendants voluntarily resigned, thereby terminating the arbitration agreement, since each entered training for TWA Captain knowing full well that he would be discharged or allowed to resign should he fail to complete Captain's Training satisfactorily. Again, the analysis and result would remain the same.

charge for cause within the meaning of the individual agreements. During the negotiations preceding the 1962 Crew Complement Agreement and the individual agreements, the parties did not discuss the meaning of the phrase "discharge for cause." However, a discharge for cause is ordinarily defined as a discharge for some reason which is not arbitrary or capricious. *International Auto Sales & Service, Inc. v. General Truck Drivers, Chauffeurs, Warehousemen & Helpers, Local Union No. 270*, 311 F.Supp. 313 (E.D.La.1970); one which is neither unjustified nor discriminatory, *see Industrial Trades Union v. Woonsocket Dyeing Co.*, 122 F.Supp. 872 (D.R.I.1954). Viewed from this perspective, it is exceedingly clear that the defendants herein were discharged for cause. They make no allegations that their discharges were simply a subterfuge to avoid the individual agreements. In fact, it is the defendants who seek to avoid the consequences of their voluntary acts. They entered training for upgrading to Captain, well aware of their inevitable discharge should they be unsuccessful. Having been unsuccessful, they seek to compel arbitration of their discharges. It was TWA's policy to discharge all such unsatisfactory trainees, and this policy was not here applied in a manner which discriminated against defendant Flight Engineers. Defendants voluntarily assumed the risk of discharge and may not now avoid the results. The Court concludes that the defendants were discharged for cause, an event not covered by the arbitration agreement entered into by the parties to this litigation.

## CONCLUSION

For the reasons stated above, the Court finds and concludes that plaintiff, Trans World Airlines, is entitled to an order enjoining arbitration of defendants grievances. The foregoing constitute the findings of fact and conclusions of law of the Court pursuant to Fed.R. Civ.P. 52(a).

So ordered.