■ In the Matter of BOARD OF EDUCATION OF THE CITY OF ALBANY, Petitioner, v. STATE DIVISION OF HUMAN RIGHTS et al., Respondents.— Proceeding pursuant to section 298 of the Executive Law to review a determination of the State Human Rights Appeal Board, dated May 21, 1971, which determined that petitioner terminated complainant's employment because of her race and color in violation of the Human Rights Law, and ordered that petitioner pay complainant the sum of $1,500 as damages for loss of wages and other benefits to which she was entitled during the 1966–1967 school year, and offer her re-employment for the 1970–1971 school year as a business education teacher. Complainant, Lola Johnson Cole, is a black woman who was hired by petitioner as a probationary teacher in September of 1964 as a business education teacher and taught in Philip Schuyler High School until June, 1966. On June 1, 1966, petitioner decided to terminate her employment which decision was based upon the recommendation of the Superintendent of the Albany Public Schools. The recommendation was based on documents consisting of complainant's rating sheets, two letters from Mr. Ben Becker, Principal of Philip Schuyler High School, and a letter from her supervisor, Dorothy Robinson. Petitioner was not aware of complainant's race or color when it acted terminating her employment. Becker's letter dated March 18, 1966 recommended complainant's dismissal stating that she was not co-operative, was frequently tardy from her homeroom assignments, and failed to attend two supervisory meetings. His letter dated May 17, 1966 again recommending dismissal, stated that " she has altered the philosophy of a number of our young negro students ", and that she " has contributed to a situation of unrest among this faculty ". Miss Robinson, in a letter dated May 16, 1966 recommending complainant's dismissal, stated that complainant's general attitude was not satisfactory; that she was unco-operative in many ways; that she seldom handed in reports on time; and that her teaching record was inadequate. On August 12, 1966, complainant filed charges with the State Division of Human Rights alleging that she was terminated from her employment by reason of her race, color, and civil rights activities. The investigating commissioner found that this complaint was without probable cause. By order, dated May 28, 1967, the Commissioner of Human Rights reversed the finding of no probable cause and referred the matter to a public hearing. Between January 9, 1969 and September 9, 1969 hearings were held with the result that the commissioner found, *inter alia*: that there was insufficient evidence that complainant's race, color and civil rights activities were factors in Miss Robinson's recommendation against her retention; that, while Mr. Becker's letters presented some justifiable reasons for recommending against complainant's continued employment, he used these reasons as a facade to secure complainant's dismissal because of her race, color and civil rights activities; that petitioner is responsible for the discriminatory acts of its employee, Principal Ben Becker; and that, as a direct result of the board's refusal to renew complainant's contract for the 1966–1967 school year, complainant incurred uncompensated damages, including loss of wages and other benefits to which she would have been entitled. On June 26, 1970 the commissioner entered a decision and order determining that the termination of complainant's employment was due to prohibited discrimination. On May 21, 1971 the State Human Rights Appeal Board affirmed

the commissioner's decision in all respects. Petitioner contends that the State Division of Human Rights has no jurisdiction over the termination of a probationary school teacher. Section 2573 of the Education Law provides, in part, as follows: "Teachers * * * shall be appointed by the board of education, upon the recommendation of the superintendent of schools, for a probationary period of not less than one year and not to exceed three years * * * The service of a person appointed to any such positions may be discontinued at any time during such probationary period, on the recommendation of the superintendent of schools, by a majority vote of the board of education." Similar provisions relating to other types of school districts appear in sections 3012 and 3013 of the Education Law. Petitioner contends that proceedings under the Human Rights Law (Executive Law, art. 15) may not require a Board of Education to justify its actions in terminating the employment of a probationary school teacher. It is well settled that a teacher has no vested rights to tenure during the probationary period, and that the service of a probationary teacher may be discontinued without a hearing, and without giving the reasons therefor. (*Matter of Butler* v. *Allen,* 29 A D 2d 799; *Matter of Pinto* v. *Wynstra,* 22 A D 2d 914; *Matter of McMaster* v. *Owens,* 275 App. Div. 506; *Matter of High* v. *Board of Educ. of Union Free School Dist. No. 7 of Town of N. Hempstead,* 169 Misc. 98, affd. 256 App. Div. 1074, affd. 281 N. Y. 815.) In *Matter of Butler* v *Allen* (*supra*) this court affirmed the dismissal of an article 78 proceeding brought to review a determination of the Commissioner of Education of the State of New York which sustained the discontinuance of a junior high school teacher's services before the expiration of his probationary period. The court stated at page 800: "his basic complaint must be that he was dismissed, and, as an incident of his dismissal, denied tenure, without a formal hearing after preferment of charges (cf. *Matter of Pinto* v. *Wynstra,* 22 A D 2d 914). * * * the ultimate issue is that of his dismissal and this was authorized, without restriction, ' at any time during [the] probationary period, on the recommendation of the superintendent of schools, by a majority vote of the board of education.' (Education Law, § 2573, subd. 1.) " In *Matter of Helsby* v. *Board of Educ. of Cent. School Dist. No. 2, Town of Claverack* (34 A D 2d 361) the Public Employment Relations Board brought a proceeding to enforce its order directing the Board of Education to reinstate a teacher whose services had been terminated during her probationary period. The teacher charged that she had been terminated because of her activities as an officer in a teachers' association in collective bargaining negotiations with the Board of Education. The court held that the Public Employment Relations Board had no statutory power to hold hearings on such charges, nor any power to direct the Board of Education to reinstate her, and the services of a teacher during the probationary period may be discontinued without a hearing and without giving the reasons therefor. In our opinion section 2573 of the Education Law has exclusive control over the termination of a school teacher during the probationary period. The determination appealed from should be annulled and the petition granted. Even assuming *arguendo,* that there was jurisdiction under the Human Rights Law to hold hearings and review the action of the Board of Education terminating complainant's services as a school teacher during her probationary period, the record, taken as a whole, lacks sufficient evidence to support the commissioner's decision. The Board of Education when it terminated complainant's employment had no knowledge of her race or color, or of any of her activities outside of the classroom. The decision of the board was based on documents which were sufficient to justify the termination of the employment and the

recommendation for such dismissal by the Superintendent of Schools. Such action in and of itself may not be held to be discriminatory practice, and the commissioner's decision and its affirmance by the Human Rights Appeal Board is not supported by sufficient evidence on the record considered as a whole. (Executive Law, § 298). The findings that Becker, the Principal of the High School, was guilty of discriminatory practice in relation to the complainant is not established by sufficient credible evidence. Such conclusion is based on the testimony of two witnesses at the hearing who were friendly to complainant, and obviously hostile to Becker. The testimony includes charges that Becker used uncomplimentary words in reference to blacks and used Negro dialect in conversations with other persons which charges were unconfirmed and denied by Becker. In contrast, many witnesses testified on behalf of Becker to the effect that his record and character were not subject to any prejudices, nor did he use derogatory racial words or phrases. Complainant's testimony confirms such a conclusion since she testified that Becker did not, during the years 1964–1966, give any indication to her that he was prejudiced against blacks. To the question " So what you are saying then, Mrs. Cole, is that Mr. Becker gave no evidence of bias or prejudice against blacks during the years 1964–1965, and during the years 1965–1966, is that correct? " Complainant answered, " I did not see such evidence ". The further charges that Becker opposed certain activities of civil rights groups, and made derogatory comments about newspaper articles criticizing his school are not relevant to complainant's dismissal by petitioner, and do not establish any personal hostility toward her or support the findings of the commissioner. It is our conclusion that the record does not contain sufficient evidence to support a determination that petitioner engaged in discriminatory action in its termination of complainant's employment. Determination of the State Human Rights Appeal Board, dated May 21, 1971, affirming the order of the Commissioner of the State Division of Human Rights, dated June 26, 1970, determining that petitioner violated section 296 of the Human Rights Law, annulled, on the law, without costs, and petition granted. Reynolds, J. P., Aulisi, Staley, Jr., Greenblott, and Sweeney, JJ., concur.