Robert E. Fischer, J.
The Board of Education of the Morris Central School District (the Board) instituted this special proceeding to obtain a stay pursuant to CPLR 7503 (subd [b]) when the Morris Education Association (the Association) sought to initiate arbitration proceedings under the provisions of a collective bargaining agreement.
The basic facts are not in dispute.
Thomas Moriarity, one of the respondents, was employed by the Board for a three-year probationary period commencing *676 September 1, 1972. In January of 1975 he was notified of an administrative recommendation that he not be rehired or appointed on tenure at the conclusion of the probationary period. Thereafter he was given the notice required by section 3031 of the Education Law that the Board would meet to review this recommendation and was furnished with a written statement purporting to provide the specific reasons therefor. Although not stated in the pleadings, it is apparent that the Board accepted the recommendation at a meeting on March 11, 1975.
Alleging that a "discharge of a member of the bargaining unit” had taken place, and that articles 2, 4, 6 and 51 of their 1974-1975 collective bargaining agreement (the Agreement) had been violated by the Board, the Association filed a grievance on March 14, 1975, seeking "reinstatement of Tom Moriarity with all accumulated benefits.” 8
Of the several articles alleged to be violated, the respondents present only section 2 of article 6 to support their position in this proceeding. It provides that: "All professional employees within the bargaining unit agree to perform their employment in a responsible and professional manner; therefore no professional employee shall be discharged, reduced in rank, or deprived of fringe benefits except for just cause.” Utilizing the language of this section, the Association contends that the failure to rehire Moriarity and appoint him on tenure at the end of his probationary period constitutes a "discharge” and that the reasons given do not establish "just cause” for such discharge.
The grievance was instituted pursuant to the "Grievance Policy and Procedure” set forth at article 4 of the Agreement which provides for resolution of grievances through various levels of appeal concluding with binding arbitration; and although there is some dispute as to whether those procedures were properly complied with, that is not an issue for consideration here. (See Matter of Long Is. Lbr. Co. [Martin], 15 NY2d 380, 385-386); Matter of Suffern Distrs. [Local 153, Office & Professional Employees Int. Union, AFL-CIO], 39 AD2d 713; Matter of Vincent J. Smith, Inc. [Truck Drivers & Helpers Local Union No. 649] 23 AD2d 944, 945.)
The term "grievance” is broadly defined .at; section 2.1 of article 4 of the Agreement as "a claim by any teacher or group of teachers in the negotiating unit based upon any event or condition affecting the terms and conditions of em *677 ployment.” When, as here, a collective bargaining agreement contains a broadly worded arbitration provision, there is a presumption of arbitrability (Board of Educ., Union Free School Dist. No. 3, Town of Huntington v Associated Teachers of Huntington, 30 NY2d 122, 128; Matter of Long Is. Lbr. Co. [Martin], 15 NY2d 380, supra; Susquehanna Val. Cent. School Dist. at Conklin v Susquehanna Val. Teachers’ Assn., 46 AD2d 104), unless it contains language "explicitly excluding” the matters at issue (Matter of Howard & Co. v Daley, 27 NY2d 285, 290), or the terms and conditions of employment are "limited by plain and clear * * * prohibitions in the statute or decisional law” (Syracuse Teachers Assn. v Board of Educ., Syracuse City School Dist., 35 NY2d 743, 744), and "so interlaced with strong public policy considerations that they have been placed beyond the reach of the arbitrators’ discretion” (Matter of Associated Teachers of Huntington v Board of Educ., Union Free School Dist. No. 3, Town of Huntington, 33 NY2d 229, 235).
The petitioner concedes that the Agreement does not specifically exclude arbitration of the grievance, but it is apparent that the controlling statutes and public policy considerations preclude the Board from relinquishing to arbitration the power to make the tenure decisions at issue under the grievance claimed.
Section 3013 (subd 1, par [a]) of the Education Law, which controls the grant of tenure, provides that "Teachers * * * shall be appointed by a majority vote of the board of education * * * upon recommendation of the district superintendent of schools” after employment for a probationary period. That subdivision further provides that services of teachers may be discontinued during the probationary period "upon the recommendation of the district superintendent, by a majority vote of the board of education or trustees.” In turn, subdivision 2 of that section limits appointment on tenure to "persons recommended by the district superintendent of schools” after they have been found "competent, efficient and satisfactory” by the principal of the district. Such provisions have been said to confer "exclusive control” on the board of education to dismiss a probationary teacher and, as an incident of dismissal, to deny tenure (Matter of Board of Educ. of City of Albany v State Div. of Human Rights, 38 AD2d 657, 658, affd 30 NY2d 925). Other courts have held that the grant of tenure "is not an arbitrable issue” since the "power to *678 grant! tenure to teachers is vested exclusively in the Board of Education” (Matter of Cent. School Dist. No. 1 of Towns of Carmel & Putnam Valley [Mahopac Teachers Assn.], 72 Misc 2d 503, 505), and that the discretion "has been specifically delegated to the Board” by law and is not therefore "within the power of the arbitrator to grant” (Matter of Cent. School Dist. No. 3 of Town of Cortlandt [Cent. School Dist. No. 3 Faculty Assn.] 75 Misc 2d 521, 522-523).
The public policy underlying these decisions has been clearly articulated in appellate courts. Thus, in Legislative Conference of City Univ. of N. Y. v Board of Higher Educ. of City of N. Y. (38 AD2d 478, affd 31 NY2d 926) although the agreement specifically recognized that the Board of Higher Education held the power to award tenure, in modifying an award that would indirectly affect that power, the court identified the policy supporting the statutes: "The statutes give the various boards of education, such as the respondent, the exclusive power to make the initial appointments and to determine whether an appointee is qualified academically so as to permit an appointee to continue long enough to obtain tenure. The public policy behind the statutes * * * is one which recognizes the overriding importance of such appointments in the maintenance of excellence in the public school system.” (38 AD2d 478, 480.)
Again in Board of Educ. of Chautauqua Cent. School Dist. v Chautauqua Cent. School Teachers Assn. (41 AD2d 47, 52-53), where fulfillment of the demand for arbitration would effectively grant tenure to a probationary teacher, the court recognized the "broad power of the Board of Education to dismiss nontenured teachers”, and "the public policy that 'decrees the need for requisite competence before the achievement of tenure’ ”, and limited arbitration to a question of compliance with contractual evaluation procedures.
In limiting arbitration, on a similar issue in Matter of Central School Dist. No. 2 (Livingston Manor Teachers Assn.) (44 AD2d 876, affd 36 NY2d 988), the court stated flatly: "it is well established' that the power to grant tenure is vested exclusively in the Board of Education * * * and it is not a subject for arbitration” (44 AD2d 876, 877).
Here the demand for arbitration does not seek to compel the Board to comply with contractual evaluation procedures or other conditions precedent to the tenure decision, but rather, seeks "reinstatement” contrary , to the tenure decision *679 itself, a process which has been vested exclusively in the discretion of the Board. Arbitration of the grievance must therefore be stayed, and the petitioner will submit an order accordingly.