PLAYBOY CLUBS INTERNATIONAL,
INC., Plaintiff,

v.

HOTEL & RESTAURANT EMPLOYEES
AND BARTENDERS INTERNATION-
AL UNION, AFL–CIO, Defendant.

No. 70 Civ. 3900.

United States District Court,
S. D. New York.

Jan. 8, 1971.

Poletti, Freidin, Prashker, Feldman & Gartner, New York City, for plaintiff; Murray Gartner, Eric Rosenfeld, Stephen F. Stander, New York City, of counsel.

Pinto, Stein & Mozer, New York City, for defendant; E. Nicholas Pinto, New York City, of counsel.

MANSFIELD, District Judge.

Plaintiff, Playboy Clubs International, Inc. ("PCI"), having brought this action against defendant Hotel & Restaurant Employees and Bartenders Union, AFL–CIO ("the Union") under § 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, and the Declaratory Judgment Act, 28 U.S.C. § 2201, now moves under Rule 65, F.R.Civ.P., for a preliminary injunction staying arbitration proceedings arising from the discharges of certain PCI employees ("Bunnies"). PCI contends that the discharges are not arbitrable under a labor agreement entered into between PCI and the Union on June 15, 1969, and to expire on June 15, 1974 ("the Agreement"). Upon a reading of the Agreement and an examination of the facts of the case, we agree with PCI, and the motion for a preliminary injunction is therefore granted.

PCI is a Delaware corporation which operates in various cities such as New York, Chicago, and Los Angeles, establishments for drinking, eating, and entertainment called Playboy Clubs. The Union is a labor organization which represents PCI's employees, including young

women called "Bunnies," a term frequently applied to rabbits.* The maintenance in Bunny personnel of an elusive quality known as "the Bunny image," is acknowledged in the Agreement, Art. VII(q) (2) as a matter of common concern to PCI, to the Union and to the Bunnies themselves. The "Bunny image" apparently depends upon the physique, attractiveness and beauty of the girl-employee who wears on the job a rabbit-like costume of scanty dimensions, quite unlike the fulsome attire (white gloves and formal dress) worn by the White Rabbit in Lewis Carroll's Alice in Wonderland. A particular employee's "Bunny image" has been rated by PCI on a numerical scale as follows: (1) "a flawless beauty;" (2) "exceptionally pretty, perhaps some minor flaw;" (3) "marginal or having some correctible deficiency, which might be weight [or] a cosmetic problem; something that is not of a more lasting, enduring, permanent nature;" (4) "loss of or the absence of the image requirements to be employed as a bunny" (Pf's Memorandum in Opposition p. 2).

Because of the importance to all concerned of maintaining each such employee's Bunny image, the Agreement provides in Article VII(q) (3) for a special three-step procedure to be employed when a Bunny is discharged for any reason other than union activity and she or the Union wishes to contest the discharge. Under this procedure, the dispute is first considered by the General Manager of the Club, or his nominee, the Bunny steward and a representative of the Union. If that is unsuccessful, it may be taken up with a panel consisting of management and Bunny representatives. Finally a decision may be required to be made by the Executive Vice President of PCI or his nominee. When a Bunny is discharged for union activities, the discharge is exempt from the Article VII procedure and is subject to arbitration under Article IX.

The discharges in question all involved Bunnies employed at the New York Playboy Club. On May 6, 1970, by discharges not at issue in this case, PCI discharged three Bunnies for "lack of Bunny image." On May 11, the Union filed grievances alleging that union activity was the real reason for the discharges and invoking arbitration under Article IX. The three cases then proceeded to arbitration under Article IX: two were settled without an arbitration award and one was decided by the arbitrator in the Union's favor on September 30, 1970.

On July 13, 1970, PCI discharged seven more New York Bunnies, and on July 25, 1970, an additional six. The reason given for all 13 discharges, as with the earlier three, was "lack of Bunny image." The Union commenced processing of these discharges through the three-step procedure of Article VII, but none were carried beyond the first stage (i. e., consideration by the General Manager and the Bunny steward).

On August 20, 1970, the Union demanded arbitration of the 13 discharges. The issues proposed for arbitration did not involve, as did the three earlier discharges, the question of whether the discharges had been based on union activity. Instead, the issues were posed as follows:

"Whether Nancy Phillips, Jodi Harness, Patricia Chapman, Penny Lauer, Teresa Slesak, Barbara Severn, Donnalee Weber, Sandra Heaton, Benle Pederson, Sandra Jones, Cathy Donnelly, Linda Raychuk, Greta St. Cross, Maren Thomas, Patricia McCune, Rosemary Tramintino were fired for 'Bunny image' or some other reason and if so what other reason and what shall the remedy be?"

"Whether the employer has failed to supply the union with a list of the

---

* "Bunny" is derived from "Bun," a Scotch word signifying "tail." The Scots say of a hare that she "cocks her bun." The word bunny is the diminutive, meaning little or short tail and in this sense is particularly applicable to the rabbit. See "Words, Facts & Phrases, A Dictionary of Curious, Quaint & Out-of-the Way Matters" by Eliezer Edwards (Chatto & Windus, London, 1911 ed.).

ratings assigned to Bunnies in the quarterly rating of July, 1970, and if so what shall the remedy be?

"Whether the employer has wrongfully rated any of the Bunnies in said rating period and if so what shall the remedy be?"

The parties have delayed arbitration by consent pending our determination of this motion for a preliminary injunction.

█ Having been invoked to exercise our power to determine arbitrability, see Metal Products Workers Union, Local 1645 v. Torrington Co., 358 F.2d 103, 105 (2d Cir. 1966), we find that the above issues are not arbitrable under the Agreement. The Agreement provides only a single exception to the Article VII procedure for contesting discharge, an exception which expressly grants the arbitrator the power to decide whether or not a particular discharge has been motivated by the employee's union activities:

"Grievances regarding discharges or suspensions shall be handled *exclusively* in the following manner (except for discharges or suspensions for union activity). * * * *" (Art. VII(q) (3); emphasis added)

The natural inference from this exception to the Article VII procedure—that all other disputes arising from discharges or suspensions *are* governed by Article VII—is reinforced by Article IX(f), which reads as follows:

"(f) Nothing contained in this Article IX or any other provision of this Agreement shall be applicable to or in any way alter, modify or amend the exclusive procedure contained in paragraph (q) of Article VII of this Agreement for dealing with complaints or grievances arising from the discharge or suspension of Bunnies (other than for union activities)."

To escape the broad scope and binding effect of Article VII(q), the Union first argues that the discharges must be viewed differently because of anonymous charges, made in mid-August, that undue pressure had been placed on certain Bun-

nies to entertain hoodlums and to engage in other unorthodox or immoral practices. Shortly after these charges were made known to Hugh Hefner, President of PCI, to the New York State Liquor Authority and the New York County District Attorney, the General Manager of the New York Playboy Club was discharged. The Union contends that if the firing of the 13 Bunnies resulted from their refusal to cooperate with the allegedly nefarious schemes of the now discharged General Manager, or from the possibility that they would enlist the Union against him, the discharge dispute does not fall within Article VII, but instead is arbitrable under Article IX.

We disagree with respect to the first of these allegedly possible grounds for rendering the discharges arbitrable. The key to the issue before us is the language of Article VII(q) (3) and IX(f), which relegates the parties to the three-stage procedure with respect to *all* discharges except for union activity. There is no claim that the discharges at issue were for union activity. Moreover, although there is certainly a presumption underlying the Agreement that discharges will be made in good faith, see Art. VII(q), the possibility that the General Manager may have acted in bad faith in making the discharges does not alter the clear agreement of the parties regarding the procedure to be followed in case of discharge for *any* reason other than union activity. In this procedure, which is no doubt intended to determine whether a particular discharge was made in good faith or bad, the Manager plays a role only in the initial stage. In addition, in the present case the allegedly corrupt Manager has been discharged and his presence in stage one no longer weakens the procedural remedy which Article VII(q) (3) is intended to provide.

With respect to the other hypothetical ground for the discharges, that the Bunnies threatened to call upon the Union for help in coping with the Manager, the Union's contention is offhand, conclusory, entirely unsupported by any evidence, and indeed is not directly pre-

sented in the demands for arbitration quoted above. Assuming that the Bunnies' threat to invoke help from the Union was "union activity" within the meaning of the Agreement, the Union may not obtain arbitration merely by stating that the issue is *whether* the discharge was for lack of Bunny image "or some other reason," and asserting later that union activity was the "other reason." As it did in the case of the first three discharges, the Union must be prepared to assert in its demand for arbitration that the discharge resulted from the Bunny's union activity. Just as PCI may not hide behind "lack of Bunny image" so as to preclude arbitration when a discharge has been based on a Bunny's union activity, the Union may not groundlessly invoke "union activity" when the dispute is properly subject to Article VII(q).

The Union's second general contention is that, when a rating system employed by PCI as of January 1970 was presented by the Union for arbitration in June, PCI consented to arbitrate the issue and thus has waived its right to object to arbitration concerning the rating system as it existed in July, which has now been demanded. We do not think that PCI's action can be deemed a waiver of its right to resist all future arbitration of the rating system. Furthermore, while a rating system such as the one alleged by the Union is not mentioned specifically in the Agreement, it is fair to assume that the parties contemplated that PCI would make some kind of rating of the Bunnies since the Agreement specifically states that discharge may be based on lack of Bunny image, Art. VII(q) (1) and (2). How PCI in its discretion decides to rate Bunny image would not in any event appear to be, as argued by the Union, a new rule under Article VII(q) (6), and the Union would seem protected in that under the Agreement any decisions regarding discharge or suspension made on the basis of the ratings are subject to the procedures set forth in Article VII(q) (3).

[2] We conclude that the Union's demands, arising as they do solely from discharges of Bunnies and containing no allegation that the discharges were for union activity, do not state arbitrable issues under the Agreement. PCI has demonstrated a strong likelihood of success upon the merits. Unless preliminary relief is granted, it will suffer irreparable injury in its employment and business relations. The conditions for preliminary injunctive relief therefore exist. American Metropolitan Enterprises of New York, Inc. v. Warner Bros. Records, Inc., 389 F.2d 903 (2d Cir. 1968); Irving J. Dorfman Co. v. Borlan Industries, Inc., 309 F.Supp. 21 (S.D. N.Y.1969). Accordingly PCI's motion is granted. John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 547, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964); District 50, United Mine Workers v. Chris-Craft Corp., 365 F.2d 946, 949 (6th Cir. 1967); Metal Products Workers Union, Local 1645 v. Torrington Co., 358 F.2d 103, 105 (2d Cir. 1966); Communication Workers of America v. New York Telephone Co., 209 F.Supp. 389 (S.D.N.Y. 1962), affd., 327 F.2d 94 (2d Cir. 1964).

The foregoing shall constitute our findings of fact and conclusions of law in accordance with Rule 52(a), F.R.Civ.P.

Settle order on notice.