**POST TRIBUNE PUBLISHING,
INC., Plaintiff,**

v.

**AMERICAN ARBITRATION
ASSOCIATION, INC., et al.,
Defendants.**

**Civ. No. H90–216.**

United States District Court,
N.D. Indiana,
Hammond Division.

June 28, 1991.

Douglas R. Pierce, Nashville, Tenn., Kathryn Schmidt, Merrillville, Ind., for plaintiff.

Joseph V. Simeri, South Bend, Ind., Richard Rosenblatt, Englewood, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

LOZANO, District Judge.

This matter is before the court on the Motion for Summary Judgment, filed August 8, 1990, by the plaintiff, Post Tribune Publishing, Inc. (hereinafter referred to as "Post Tribune"). The following motions are also before the court: The Motion for Entry of Judgment by Default, filed August 22, 1990, by the Post Tribune; the Motion for Leave to File Counterclaim, filed September 7, 1990, by the defendant, the Gary Typographical Union, No. 590 (hereinafter referred to as the "Union"); the Motion for Protective Order, filed March 18, 1991, by the Union; the Motion for Protective Order, filed March 22, 1991, by the Union; the Motion for Summary Judgment As to Count II of the Complaint, filed April 12, 1991, by the Post Tribune; and the Motion for Summary Judgment, filed April 12, 1991, by the Union. For the reasons set forth herein, the Post Tribune's Motion for Summary Judgment, filed August 8, 1990, is hereby GRANTED IN PART and DENIED IN PART; the Post Tribune's Motion for Entry of Judgment by Default is hereby GRANTED IN PART and DENIED IN PART; the Post Tribune's Motion for Summary Judgment on Count II of the Complaint is hereby DENIED; and the Union's Motion for Summary Judgment is hereby GRANTED. In light of the foregoing rulings on the motions for summary judgment, the Union's Motion for Leave to File Counterclaim is DENIED; and both of the Union's motions for a protective order, filed March 18 and 22, 1991, are hereby DENIED.

## BACKGROUND

The Post Tribune is engaged in the publication of a daily newspaper known as the "Post Tribune", and the Union is and has been the exclusive collective-bargaining representative for employees performing composing room and camera-plate making work at the Post Tribune. The Post Tribune and the Union were parties to a collective-bargaining agreement, the preamble of which provides that this agreement "shall be effective beginning March 3, 1986, and ending March 2, 1988." (See Exhibit A, attached to the Stipulations, filed April 15, 1991, by the parties (hereinafter referred to as the "Contract")).

The Union notified the Post Tribune of its intent to negotiate a new contract by letter of December 1, 1987. (See Exhibit B, attached to the Stipulations, filed April 15, 1991, by both parties (hereinafter referred to as the "Stipulations").) Pursuant to 29 U.S.C. § 158(d), the Union also notified the Indiana Division of Labor that on December 1, 1987, the Union had notified the Post Tribune of its intention "to terminate or modify existing conditions." (See Exhibit C, attached to the Stipulations.) Between February 11, 1988 and April 3, 1991, representatives of the Post Tribune and of the Union have met to negotiate, but have not yet agreed upon a new collective-bargaining agreement. (See the Stipulations, p. 3, ¶¶ 10–12; and the Affidavit of Albert Rudy, executed April 10, 1991, attached to defendant, Gary Typographical Union No. 590's Motion for Summary Judgment as Exhibit 2, filed April 12, 1991.)

The Contract, which expired March 2, 1988, provides for the creation of a Joint

Standing Committee to be comprised of three representatives appointed by the Post Tribune and three representatives appointed by the Union. (See Contract, Article Seven, Section 25-01, p. 21.) The Contract also provides that if the Joint Standing Committee is unable to resolve a grievance, "then it shall refer the matter to a Board of Arbitration, the representatives of each party ... [are] to appoint three arbiters and the six (6) shall agree upon a seventh[ ] ... but if after seven (7) days the six (6) members are unable to agree on a seventh member, he shall be selected from names supplied by the American Arbitration Association, and the dispute shall be resolved under the rules of the American Arbitration Association." (See Contract, Article Seven, Sections 25-03—25-04.) The Contract also provides that:

> [t]o this Joint Standing Committee shall be referred all matters which come under its jurisdiction by this agreement and all disputes which may arise as to the interpretation to be placed upon any clause of the agreement, except as provided otherwise herein, or alleged violations thereof which cannot be settled otherwise.

(See Contract, Article Seven, Section 25-02, p. 21.) This Contract also specifically provides that the only matters are not subject to arbitration are matters concerning local union laws not affecting wages, hours or working conditions, and the General Laws of the International Typographical Union. (See Contract, Article Seven, Section 25-05, p. 21.) Finally, this Contract provides that

> [i]f either party hereto wishes to propose an amendment to this agreement, or a new contract to take the place of this one upon its expiration date, it shall notify the other party in writing of its wishes at least sixty (60) days prior to expiration of this contract and each party shall exchange with each other their proposals for the contract not later than thirty (30) days prior to expiration. Failure to give notice, however, shall not be construed as extending this contract beyond its expiration date. If agreement has not been reached on a new contract at the expiration date, conditions prevailing at the expiration are to continue during the negotiations of a new contract.

(See Contract, Article One, Section 1-04, p. 1.)

The parties dispute the arbitrability of a post-contract grievance which concerns the Post Tribune's assignment of composing room work, over which the Union claims jurisdiction, to the Post Tribune's promotion department. Since January 1990, the Post Tribune's promotion department has been preparing "camera ready in-house promotional display advertisement copy." (See Stipulations, p. 4, ¶ 13.) The Union filed a grievance for the alleged failure of the Post Tribune to assign the makeup of these promotional display advertisements to composing room employees on March 19, 1990. (See Exhibit D, attached to Stipulations.) The Post Tribune considered the grievance but would not agree to submit the matter to arbitration because the Contract had expired. The parties did, however, discuss the grievance in a Joint Standing Committee meeting on March 22, 1990, but did not resolve the grievance.

Thereafter, by letter of March 26, 1990, the Union demanded arbitration of the grievance pursuant to Article One, Section 1-04 of the Contract. (See Exhibit E, attached to the Stipulations.) The Post Tribune refused to arbitrate the grievance because of its belief that there is no duty to arbitrate a grievance which arises after the expiration of a contract. (See Affidavit of Thomas D. Hartzell, executed August 6, 1990, filed August 8, 1990, in support of the Post Tribune's Motion for Summary Judgment, filed August 8, 1990.)

The Union filed the Demand for Arbitration, dated April 27, 1990, with the American Arbitration Association (hereinafter referred to as "AAA"), on April 30, 1990. (See letter of Bettye Jean Brown, dated May 7, 1990, filed in support of the Post Tribune's Motion for Summary Judgment, filed August 8, 1990.) The Contract provides that if the Joint Standing Committee is unable to resolve the grievance, "then it shall refer the matter to a Board of Arbitration[.]" (See Contract, Article Seven, Section 25-03, p. 21.) Thereafter, the Post

Tribune filed this suit to obtain a declaratory judgment regarding jurisdiction to determine the arbitrability of a grievance, and regarding the grievance itself, and to obtain injunctive relief.

DISCUSSION

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only if it is demonstrated "that there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law." *Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir.1988); *Beard v. Whitley County REMC*, 840 F.2d 405, 409 (7th Cir.1988); *Roman v. United States Postal Serv.*, 821 F.2d 382, 385 (7th Cir.1987); *McGraw-Edison Co. v. Walt Disney Prods.*, 787 F.2d 1163, 1167 (7th Cir.1986); *Fed. Deposit Ins. Corp. v. Meyer*, 781 F.2d 1260, 1267 (7th Cir.1986). "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts which might effect the outcome of the suit under governing law will properly preclude the entry of summary judgment.'" *Walter*, 840 F.2d at 434 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–252, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 211 (1986)).

■ The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–162, 90 S.Ct. 1598, 1609–1610, 26 L.Ed.2d 142 (1970); *Backes v. Valspar Corp.*, 783 F.2d 77, 79 (7th Cir.1986). To preclude summary judgment, a non-moving party must show a material issue of fact. "A party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact which requires trial." *Beard*, 840 F.2d at 410. Therefore, if a party fails to establish the existence of an essential element of its case on which it bears the burden of proof at trial, summary judgment will be appropriate. In this situation, "there can be no 'genuine issue

as to any material fact', since a complete failure of proof concerning an essential element of a non-moving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273 (1986). *See also Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511, 91 L.Ed.2d at 212.

■ The principles which govern a determination whether an employer is obligated to arbitrate a union's grievance are well-established and "have led to continued reliance on arbitration, rather than strikes or lockouts, as the preferred method of resolving disputes arising during the term of a collective-bargaining agreement." *AT & T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986) (construing the series of cases known as the *Steelworkers' Trilogy: Steelworkers v. Am. Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *Steelworkers v. Warrior & Gulf Navig. Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); and *Steelworkers v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960)). First, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Technologies*, 475 U.S. at 649, 106 S.Ct. at 1418 (quoting *Warrior & Gulf*, 363 U.S. at 582, 80 S.Ct. at 1353; *Am. Mfg. Co.*, 363 U.S. at 570–571, 80 S.Ct. at 1364–1365 (Brennan, J. concurring)). This principle recognizes that an arbitrator's authority to resolve a dispute exists only when "the parties have agreed in advance to submit such grievances to arbitration." *AT & T Technologies*, 475 U.S. at 649–650, 106 S.Ct. at 1418 (citing *Gateway Coal Co. v. United Mine Workers*, 414 U.S. 368, 374, 94 S.Ct. 629, 635, 38 L.Ed.2d 583 (1974)).

■ The second principle derived from the *Steelworkers Trilogy* is that "[u]nless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *AT & T Technologies*, 475 U.S. at 650, 106 S.Ct. at 1418 (citations omitted). As the Court not-

ed in *AT & T Technologies*, "[t]he willingness of parties to enter into agreements that provide for arbitration of specified disputes would be 'drastically reduced[ ]' [ ] if a labor arbitrator had the 'power to determine his own jurisdiction[.]' " 475 U.S. at 651, 106 S.Ct. at 1419 (quoting Cox, *Reflections Upon Labor Arbitration*, 72 Harv.L. Rev. 1482, 1509 (1959)). Since the duty to arbitrate is based in contract, where this duty is disputed, a "judicial determination that the collective bargaining agreement does in fact create such a duty[ ]" must precede submission of the dispute to an arbitrator. *Id.* at 650, 106 S.Ct. at 1418–1419 (quoting *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 546–547, 84 S.Ct. 909, 912–913, 11 L.Ed.2d 898 (1964)).

The third principle derived from the *Steelworkers Trilogy* requires a court to refrain from considering the merits of the particular grievance in deciding whether the parties agreed to arbitrate. The reasoning behind this principle is that if such an agreement exists, the agreement requires the parties "to submit all grievances to arbitration, not merely those which the court will deem meritorious." *AT & T Technologies*, 475 U.S. at 651, 106 S.Ct. at 1419 (quoting *Am. Mfg. Co.*, 363 U.S. at 568, 80 S.Ct. at 1346).

■ The final principle, which derives not only from the *Steelworkers Trilogy* but also from "well-established federal policy favoring arbitration as the means of resolving disputes over the meaning and effect of collective-bargaining agreements[,]" is the strong presumption favoring arbitrability in cases in which the contract contains an arbitration clause. *Nolde Bros., Inc. v. Local No. 358, Bakery & Confect. Workers Union*, 430 U.S. 243, 255, 97 S.Ct. 1067, 1073–1074, 51 L.Ed.2d 300, *reh'g denied*, 430 U.S. 988, 97 S.Ct. 1689, 52 L.Ed.2d 384 (1977) (construing 29 U.S.C. § 173(d); *Warrior & Gulf*, 363 U.S. at 582, 80 S.Ct. at 1353). *Accord AT & T Technologies*, 475 U.S. at 651, 652, 106 S.Ct. at 1419, 1420. This presumption "furthers the national labor policy of peaceful resolution of labor disputes and thus best accords with the parties' presumed objectives in pursuing

collective bargaining." *AT & T Technologies*, 475 U.S. at 651–652, 106 S.Ct. at 1419 (quoting *Schneider Moving & Storage Co. v. Robbins*, 466 U.S. 364, 371–372, 104 S.Ct. 1844, 1849–1850, 80 L.Ed.2d 366 (1984); *Gateway Coal Co.*, 414 U.S. at 378–379, 94 S.Ct. at 637–638)).

### The Motions for Summary and Default Judgment on Count I

On Count I of the Complaint, the Post Tribune requests relief in the form of a preliminary injunction against AAA and a declaratory judgment pursuant to section 8 of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158, that AAA lacks authority or jurisdiction to proceed with a demand for arbitration when the Post Tribune denies arbitrability due to contract termination. The clerk of the court entered a default against AAA on September 4, 1990, for failure to answer, plead or otherwise defend this cause of action, and the Post Tribune has moved for entry of judgment by default.

■ The decision whether to grant a declaratory judgment is committed to the district court's sound discretion. *Infinity Broadcasting Corp. v. Prudential Ins. Co.*, 869 F.2d 1073, 1075 (7th Cir.1989) (citing *Cunningham Bros., Inc. v. Bail*, 407 F.2d 1165, 1169 n. 3 (7th Cir.), *cert. denied*, 395 U.S. 959, 89 S.Ct. 2100, 23 L.Ed.2d 745 (1969)). "A plaintiff will have raised a cause of action for a declaratory judgment if 'the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.' " *Id.* (quoting *Maryland Casualty Co. v. Pac. Coal and Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941); and citing *Preiser v. Newkirk*, 422 U.S. 395, 402, 95 S.Ct. 2330, 2334, 45 L.Ed.2d 272 (1975)).

■ The Union opposes the Post Tribune's motion for summary judgment on Count I of the Complaint on the ground that this dispute has been mooted by the Union's voluntary withdrawal of its demand for arbitration pending the outcome

of this lawsuit. A court's jurisdiction to hear and determine a case may abate if a case becomes moot because "it can be said with assurance that 'there is no reasonable expectation ...' that the alleged violation will recur, ... and interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *County of Los Angeles v. Davis,* 440 U.S. 625, 632, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979) (quoting *United States v. W.T. Grant Co.,* 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953); and citing *DeFunis v. Odegaard,* 416 U.S. 312, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974); *Indiana Employment Sec. Div. v. Burney,* 409 U.S. 540, 93 S.Ct. 883, 35 L.Ed.2d 62 (1973)).

■ The dispute as to whether AAA has authority and jurisdiction to determine the arbitrability of a grievance is not mooted by the Union's voluntary withdrawal of its demand for arbitration. Voluntary cessation at the complained of behavior by the alleged wrongdoer does not moot an issue capable of repetition yet evading review and deprive a court of its jurisdiction to hear and determine a case. *County of Los Angeles v. Davis,* 440 U.S. at 632, 99 S.Ct. at 1383 (citing *United States v. W.T. Grant Co.,* 345 U.S. at 632, 73 S.Ct. at 897). This court notes that the Union did not withdraw its demand for arbitration until after the Post Tribune filed this lawsuit and moved for summary judgment. It is very plausible that another post-contract grievance or dispute over arbitrability could occur, and that another lawsuit would be filed to seek a preliminary injunction and declaratory judgment. Moreover, there has been no showing that the Union's withdrawal of its demand for arbitration "completely and irrevocably eradicated the effects" of the Union's pursuit of arbitration despite the Post Tribune's refusal to arbitrate due to contract termination. The parties' dispute over this issue has not been resolved. As to the issue regarding whether an arbitrator has jurisdiction to determine the arbitrability of a grievance, the Union has failed to carry its heavy burden of demonstrating mootness. Both conditions have not been satisfied and both parties still have "a legally cognizable interest in the final determination of the underlying questions of fact and law." *County of Los Angeles v. Davis,* 440 U.S. at 632, 99 S.Ct. at 1383 (citing *United States v. W.T. Grant Co.,* 345 U.S. at 632–633, 73 S.Ct. at 897).

■ While the Union's voluntary withdrawal of its demand for arbitration does not moot the issue as to whether an arbitrator has jurisdiction to determine the arbitrability of a grievance, it does obviate issuing injunctive relief pending the outcome of this suit. A preliminary injunction staying arbitration proceedings pending completion of an action for declaratory judgment as to the arbitrability of the underlying dispute is available if the general requirements for preliminary injunctive relief are met. *Playboy Clubs Int'l, Inc. v. Hotel and Rest. Employees and Bartenders Int'l Union,* 321 F.Supp. 704, 707 (S.D. N.Y.1971) (citations omitted). To establish the conditions necessary to warrant a stay of arbitration in this case, the Post Tribune must demonstrate a strong likelihood of success on the merits and that it will suffer irreparable injury in its employment and business relations without this relief. *Id.* The Post Tribune cannot establish the second condition because the arbitration proceedings have already been voluntarily stayed.

■ The Post Tribune correctly argues that whether or not a duty to arbitrate exists is a matter for the court, not the arbitrator, to determine based on the contract entered into by the parties. *John Wiley & Sons, Inc.,* 376 U.S. at 546–547, 84 S.Ct. at 912–913 (citations omitted). This rule applies "[u]nless the parties clearly and unmistakably provide otherwise[.]" *AT & T Technologies,* 475 U.S. at 650, 106 S.Ct. at 1418–1419. In this case, the Contract does not provide clearly, expressly, or otherwise that the parties agreed to submit the issue of *arbitrability* of a grievance to an arbitrator. Therefore, AAA lacks authority or jurisdiction to determine whether the Post Tribune has a duty to arbitrate the Union's post-contract grievance, and this court will decide this issue based on the Contract between the parties.

The Post Tribune has also moved for the entry of judgment against AAA on the default entered against AAA on September 4, 1990. (See Motion for Entry of Judgment by Default, filed August 22, 1990, and entered on the docket September 4, 1990.) The United States Court of Appeals for the Seventh Circuit has held that in entering judgment on a default, " 'the well-pleaded allegations of the complaint relating to liability are taken as true,' and those relating to the amount of damages suffered ordinarily are not." *Merrill Lynch Mortg. Corp. v. Narayan*, 908 F.2d 246, 253 (7th Cir.1990) (quoting *United States v. DiMucci*, 879 F.2d 1488, 1497 (7th Cir. 1989); and citing *Dundee Cement Co. v. Howard Pipe & Concrete Prod., Inc.*, 722 F.2d 1319, 1323 (7th Cir.1983)). "Damages must be proved unless they are liquidated or capable of calculation." *Merrill Lynch Mortg. Corp.*, 908 F.2d at 253 (citing *DiMucci*, 879 F.2d at 1497; *Dundee Cement Co.*, 722 F.2d at 1323). While the Post Tribune seeks a judgment on default which awards declaratory and injunctive relief rather than monetary damages, it seems that the rule requiring the Post Tribune to prove that it is entitled to the relief sought would still apply.

The Post Tribune has proven that it is entitled to declaratory relief but has failed to establish that injunctive relief is proper in this case. On Count I of the Complaint, there are no genuine issues of material fact and all issues of law with respect to whether an arbitrator has jurisdiction to determine the arbitrability of a grievance must be resolved in favor of the Post Tribune and against AAA and the Union. The Post Tribune's motion for summary judgment on Count I and Motion for Entry of Judgment by Default are granted to the limited extent that the Post Tribune is granted a declaratory judgment that AAA lacks authority or jurisdiction to determine whether the Post Tribune has a duty under the Contract to arbitrate the Union's post-contract grievance. The court will decide this issue based on the Contract. The Post Tribune's Motion for Entry of Judgment by Default and motion for summary judgment on Count I are denied to the extent that the

Post Tribune seeks preliminary injunctive relief.

*The Cross–Motions for Summary Judgment on Count II*

While the duty to arbitrate is contractual and contract obligations generally "do not survive beyond the period for which they are expressly undertaken[,]" in some cases, "the obligation to arbitrate survives the expiration of the contract." *Milwaukee Typogr. Union No. 23 v. Madison Newspapers, Inc.*, 444 F.Supp. 1223, 1226 (W.D.Wis.1978) (citations omitted), *aff'd*, 622 F.2d 590 (7th Cir.1980). The principles established by the *Steelworkers Trilogy* do not require a determination "that termination of a collective-bargaining agreement automatically extinguishes a party's duty to arbitrate grievances arising under the contract." *Nolde Bros.*, 430 U.S. at 251–252, 97 S.Ct. at 1071. As the Court held in *Nolde Bros.*, by including an arbitration clause in their contract, "the parties clearly express their preference for an arbitral, rather than a judicial[,] interpretation of their obligations under the collective-bargaining agreement." 430 U.S. at 254, 97 S.Ct. at 1073. Thus, "[w]hile the termination of the collective-bargaining agreement works an obvious change in the relationship between an employer and union, it would have little impact on many of the considerations behind their decision to resolve their contractual differences through arbitration." *Id.*

The United States Court of Appeals for the Seventh Circuit has held that:

The ultimate issue in post-contract grievance cases, as in all section 301[, 29 U.S.C. § 185] suits to compel arbitration, is the intent of the parties regarding arbitrability, since arbitration is a creature of the collective bargaining agreement and a party cannot be compelled to arbitrate any matter that he has not agreed to arbitrate.

*Local 703, Int'l Bhd. of Teamsters v. Kennicott Bros. Co.*, 771 F.2d 300, 302 (7th Cir.1985) (construing *Nolde Bros.*, 430 U.S. at 250–51, 97 S.Ct. at 1071). To determine whether the Post Tribune and the Union intended that post-contract grievances be

resolved by arbitration rather than in the courts, this court must consider the language of the Contract together with the facts surrounding the Union's grievance. *See Local 703*, 771 F.2d at 302 (citing *Nolde Bros., supra*).

The Union's grievance concerns the Post Tribune's assignment of the work involved in preparing "camera-ready promotional advertisement copy" to the Post Tribune's promotion department, rather than to the composing room employees. The parties have stipulated that the Post Tribune has been assigning this work, over which the Union claims jurisdiction, to the promotion department "[s]ince approximately January 1990 and as a result of recently acquired computer technology[.]" (See Stipulations, p. 2, ¶ 8.)

While the parties do not specify the basis in the Contract of the Union's grievance, this grievance appears to be based on sections 21–01 and 21–02 of the expired Contract, which provide that:

> Section 21–01. It is agreed by the Employer that during the life of this contract no equipment or machinery of a type not now operated or used in the bargaining unit will be installed or used, in whole or in part, in the production of their newspaper without one hundred and five (105) days prior notice to the Union.

> Section 21–02. In the event the Employer decides to introduce any new equipment, computer, machinery, or process which is a substitute for, or evolution of, present composing room equipment, machinery or processes, employees covered by this agreement will perform all work within the jurisdiction of the Union regardless of the equipment or materials used.

(See Contract, p. 17, sections 21–01, 21–02.) The arbitration clause of this expired Contract provides for the creation of a "Standing Committee of three representatives appointed by the Employer and a like committee of three representatives appointed by the Union[,]" and also provides that

> [t]o this Joint Standing Committee shall be referred all matters which come under

its jurisdiction by this agreement and all disputes which may arise as to the interpretation to be placed upon any clause of the agreement, except as provided otherwise herein, or alleged violations thereof, which cannot be settled otherwise.

(See Contract, p. 21, sections 25–01, 25–02.) This Contract specifically provides "that local union law not effecting wages, hours, or working conditions and the General Laws of the International Typographical Union shall not be subject to arbitration[,]" but makes no other specific provision as to matters which the parties expressly agreed would not be subject to arbitration. (See Contract, p. 21, section 25–05.)

Considering the subject matter of the grievance, the parties' dispute concerns either the interpretation or an alleged violation of sections 21–01 and 21–02 of the expired Contract. The Post Tribune's argument that the actions which gave rise to the Union's post-contract grievance do not involve hours or wages is of no moment. First, as the Court held in *AT & T Technologies, Inc.*:

> [i]t is the [district] court's duty to interpret the agreement and to determine whether the parties intended to arbitrate [a particular] grievance[.] If the court determines that the agreement so provides, then it is for the arbitrator to determine the relative merits of the parties' substantive interpretations of the agreement.

475 U.S. at 651, 106 S.Ct. at 1420. Secondly, without expressing an opinion on the merits of this dispute, this court notes that if the dispute concerns the Post Tribune's assignment of work over which the Union claims jurisdiction to non-union employees, then it is inevitable that the wages and hours of Union employees are affected. Thus, the grievance arguably concerns not only sections 21–01 and 21–02 of the Contract, but also the terms and conditions of employment.

Considering its breadth, the arbitration clause would undeniably cover this grievance but for the parties' dispute over the enforceability of that clause. The Post Tribune concedes this matter by stating in

its answer brief filed May 1, 1991, that the "Post Tribune does not contest whether the arbitration clause, if it were in effect, would cover the underlying grievance." (See Plaintiff's Answer Brief to Defendant's Brief in Support of Motion for Summary Judgment, filed May 1, 1991, p. 10.) The Post Tribune contends that although the Contract contains an arbitration clause, the presumption of arbitrability, which generally applies to collective-bargaining agreements which contain arbitration clauses, does not apply in this case because the Contract expired before the grievance arose. The Supreme Court discussed the presumption of arbitrability in the case of *AT & T Technologies, Inc. v. Communication Workers*, which involved a dispute over the interpretation of a provision of a contract which had not expired. 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). There, the Court held that

> Where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that the covers the asserted dispute. Doubts should be resolved in favor of coverage." *Warrior & Gulf,* 363 U.S. at 582–583, 80 S.Ct. at 1352–1353. *See also Gateway Coal Co. v. Mine Workers,* 414 U.S. 368, 377–378, 94 S.Ct. 629, 636–637, 38 L.Ed.2d 583 (1974). Such a presumption is particularly applicable where the clause is as broad as the one in this case, which provides for arbitration of "any differences arising with respect to the interpretation of this contract or the performance of any obligation hereunder ..." In such cases, "[i]n the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *Warrior & Gulf,* 363 U.S. at 584–585, 80 S.Ct. at 1353–1354.

*AT & T Technologies,* 475 U.S. at 651, 106 S.Ct. at 1419.

The Post Tribune misconstrues the holding *AT & T Technologies, Inc.,* however, when it argues that "[a]lthough the fourth principle does provide for a presumption of arbitrability, a court is not to reach this presumption until it decides that the parties have in force an agreement that contains an arbitration clause." (See Plaintiff's Answer Brief to Defendant's Brief In Support of Motion for Summary Judgment, filed May 1, 1991, p. 10.) The Supreme Court said nothing in *AT & T Technologies, Inc.* to indicate that the parties must "have in force an agreement that contains an arbitration clause[,]" but rather held that the question as to whether a collective-bargaining agreement creates a duty for the parties to arbitrate a particular grievance is a matter for the court to determine on the basis of the contract entered into by the parties. 475 U.S. at 650, 106 S.Ct. at 1418–1419. Moreover, the Court has held that the fact that the Union asserts a post-contract grievance "over an obligation arguably created by the expired agreement[ ] ... shortly after, rather than before, contract termination does not control the arbitrability of that claim." *Nolde Bros.,* 430 U.S. at 253, 97 S.Ct. at 1072 (citing *Piano & Musical Instr. Workers Union v. W.W. Kimball Co.,* 379 U.S. 357, 85 S.Ct. 441, 13 L.Ed.2d 541 (1964) (*rev'g Piano & Musical Instr. Workers Union v. W.W. Kimball Co.,* 333 F.2d 761 (7th Cir.1964)); *John Wiley & Sons, supra;* and *Steelworkers v. Am. Mfg. Co., supra.*).

The presumption of arbitrability does not apply indefinitely after the expiration of the collective-bargaining agreement. *Local 703,* 771 F.2d at 303 (construing *Nolde Bros.,* 430 U.S. at 255 n. 8, 97 S.Ct. at 1074 n. 8 (other citations omitted)). However, the cases which deny the arbitrability of post-contract grievances based on the length of time between the contract expiration and the surfacing of a post-contract grievance are factually distinguishable from the case at bar.

*Milwaukee Typogr. Union v. Madison Newspapers,* a case in which the district court found that the parties' obligation to arbitrate expired with the collective-bargaining agreement, is factual distinguish-

able from the case at bar. 444 F.Supp. 1223 (W.D.Wis.1978), *aff'd*, 622 F.2d 590 (7th Cir.1980). In *Milwaukee Typogr. Union v. Madison Newspapers*, the employer notified the union that the contract and all other agreements between the parties would expire on a date certain, February 28, 1977 at midnight. 444 F.Supp. at 1225. Unlike the case at bar, however, the parties bargained for a new contract prior to February 28, 1977, the employer offered the union a "firm and final" proposal for a new contract, which the union rejected, and the parties bargained to impasse. *Id.* Thereafter, the employer implemented parts of its "firm and final" proposal. *Id.* Unlike the case at bar, the Milwaukee Typographical Union based its post-contract grievance not on a provision of the expired agreement, which contained an arbitration clause, but upon the employer's "firm and final" proposal, which was enacted subsequent to the expiration of the contract and the impasse in bargaining. 444 F.Supp. at 1226, 1227.

In *Local 703, Int'l Bhd. of Teamsters v. Kennicott Bros. Co.*, the United States Court of Appeals for the Seventh Circuit held that grievances "triggered" more than six (6) months after the expiration of the contract were not arbitrable. 771 F.2d at 304. There, the parties were negotiating a "replacement agreement" when the contract expired, such that under the terms of the expired contract, the contract was extended to a date certain, October 30, 1981, "or until the negotiations broke off, whichever came first." 771 F.2d at 301. In *Local 703*, negotiations broke off in October or November 1981 and the parties neither executed a supplemental agreement to extend the expired contact, nor entered into a replacement agreement, and the post-contract grievance was "triggered" by events which occurred seven (7) to eight (8) months later. 771 F.2d at 301.

In the case at bar, Section 1–04 of the Contract may reasonably be read to extend the collective-bargaining agreement between the parties to cover the period between the expiration of the Contract and the point at which the parties either enter into a replacement agreement or bargain to impasse. Prior to the expiration of the Contract, the Union gave notice of its intent to negotiate a new contract, and the parties began to negotiate a new contract. (See Stipulations, filed April 15, 1991, p. 3, ¶¶ 9–11.) Unlike the parties in *Local 703* and *Milwaukee Typogr. Union v. Madison Newspapers*, however, the parties in the case at bar have not bargained to impasse and the Contract does not set a date certain at which "conditions prevailing at the expiration" cease regardless of whether a new contract has been entered into. The Contract does, however, state that if the parties are actively negotiating a new contract at the expiration of the pending Contract, "conditions prevailing at the expiration are to continue during the negotiations of a new contract."

The Post Tribune argues that "[c]onditions that continue at the expiration of a collective bargaining agreement are only those which affect the employer-employee relationship, not those that affect the employer-union relationship[,]" and that "[a]rbitration is not a condition that continues after contract expiration." (See Plaintiff's Answer Brief to Defendant's Brief in Support of Motion for Summary Judgment, filed May 1, 1991, p. 2.) The Post Tribune attributes both of these propositions to *Milwaukee Typogr. Union No. 23 v. Madison Newspapers*, 444 F.Supp. at 1226 (construing *Procter & Gamble Indep. Union v. Procter & Gamble Mfg. Co.*, 312 F.2d 181 (2nd Cir.1962), *cert. denied*, 374 U.S. 830, 83 S.Ct. 1872, 10 L.Ed.2d 1053 (1963)).

In *Procter & Gamble Indep. Union v. Procter & Gamble Mfg. Co.*, the court of appeals held that "[t]he right to arbitrate under a collective agreement is not ordinarily a right incident to the employer-employee relationship, but one which is incident to the relationship between employer and a union." 312 F.2d at 184. The court of appeals further held that "the right to arbitrate is in no sense an incident or a 'condition' of the employer-employee relationship as such, but depends, in exactly the same degree as does the union's right to arbitrate, on the existence of an agreement to arbitrate." *Id.* at 185–186. The

court of appeals found that no duty to arbitrate existed because the facts which gave rise to the grievances at issue occurred in the interval between the union's refusal to accept the employer's offer to further extend the contract during negotiations and the entry of the new collective-bargaining agreement. *Id.* at 183–184.

In *Milwaukee Typogr. Union No. 23 v. Madison Newspapers, Inc.*, the district court construed the opinion in *Procter & Gamble Indep. Union v. Procter & Gamble Mfg. Co.* to stand for the proposition that "the right to arbitrate is neither a condition of employment nor an incident of the employer-employee relationship but depends on the existence of an agreement to arbitrate[,]" and that generally, "contract obligations do not survive beyond the period for which they are expressly undertaken[.]" 444 F.Supp. at 1226 (construing *Procter & Gamble Indep. Union v. Procter & Gamble Mfg. Co., supra*). However, rather than hold that in every case "arbitration is not a condition which continues after contract expiration," the court expressly stated that "there are some situations in which, as to a particular grievance, the obligation to arbitrate survives the expiration of the contract." *Id.*

On the issue as to whether an agreement to arbitrate exists in the case at bar, both *Procter & Gamble Indep. Union* and *Milwaukee Typogr. Union No. 23* are factually distinguishable from the case at bar. In each case, the court found that the agreement to arbitrate expired subsequent to the expiration date of the contract as expressly stated within the contract and concurrent with the union's refusal of either the employer's offer to further extend the contract during the period of negotiations or the employer's firm and final proposal for a new collective-bargaining agreement. In the case at bar, the Contract states that "conditions prevailing at the expiration" shall continue during negotiations and no party has made or rejected a firm and final proposal for a collective-bargaining agreement. Additionally, the Contract does not provide a date certain upon which these "conditions" expire regardless of the status of negotiations. Thus, neither *Procter &*

*Gamble Indep. Union* nor *Milwaukee Typogr. Union* are dispositive of the issue as to whether, based on the Contract entered into between the parties in this case, there exists an agreement to arbitrate post-contract grievances.

Contrary to the Post Tribune's arguments regarding whether arbitration is a term or condition of employment, the Court has recently noted in the context of unfair labor practice charges that "arrangements for arbitration of disputes are a term or condition of employment and a mandatory subject of bargaining." *Litton Fin. Printing Div. v. N.L.R.B.*, ⸺ U.S. ⸺, ⸺, 111 S.Ct. 2215, 2221, 115 L.Ed.2d 177 (1991) (citing 1 C. Morris *The Developing Labor Law* 813 (2d ed. 1983) (citing cases); *United States Gypsum Co.*, 94 N.L.R.B. 112, 131 (1951)), *rev'g in part and remanding* 893 F.2d 1128 (9th Cir. 1990). "[A]n employer commits an unfair labor practice if, without bargaining to impasse, it effects a unilateral change of an existing term or condition of employment." *Litton*, ⸺ U.S. at ⸺, 111 S.Ct. at 2221 (citing *N.L.R.B. v. Katz*, 369 U.S. 736, 82 S.Ct. 1107, 8 L.Ed.2d 230 (1962)). This prohibition of unilateral changes is based on sections 8(a)(5) and 8(d) of the NLRA, which "require an employer to bargain 'in good faith with respect to wages, hours, and other terms and conditions of employment.'" *Litton*, ⸺ U.S. at ⸺, 111 S.Ct. at 2221. Thus, "an employer's failure to honor the terms and conditions of an expired collective-bargaining agreement pending negotiations on a new agreement constitutes bad faith bargaining in breach of sections 8(a)(1), 8(a)(5) and 8(d) of the [NLRA]." *Laborers Health and Welfare Trust Fund v. Advanced Lightweight Concrete Co.*, 779 F.2d 497, 500 (9th Cir. 1985), *aff'd*, 484 U.S. 539, 108 S.Ct. 830, 98 L.Ed.2d 936 (1988).

Generally, to the extent these terms and conditions of employment are enforceable, they remain so by operation of the NLRA, not by virtue of the expired contract. *Litton*, ⸺ U.S. at ⸺, 111 S.Ct. at 2225 (citing *Office and Prof. Employees Ins. Trust Fund v. Laborers Funds Admin.*

*Office*, 783 F.2d 919, 922 (9th Cir.1986)); *cf. Derrico v. Sheehan Emerg. Hosp.*, 844 F.2d 22, 25–27 (2d Cir.1988) (although bargaining agreement has expired, rights and duties under the expired agreement "retain legal significance because they define the *status quo* " for purposes of the prohibition on unilateral changes). The fact that an employer chooses to maintain many of the terms or conditions of employment which existed prior to expiration does not establish that the expired contract is or is to be treated as still effective. *See Procter & Gamble Indep. Union v. Procter & Gamble Mfg. Co.*, 312 F.2d at 184. "[A] party may be relegated to filing unfair labor practice charges with the [N.L.R.B.] if it believes that its counterpart has implemented a unilateral change in violation of the NLRA." *Litton*, — U.S. at —, 111 S.Ct. at 2222. Unfair labor practice charges should, however, be resolved by the NLRB rather than by a district court. *Laborers Health and Welfare Trust Fund v. Advanced Lightweight Concrete Co.*, 779 F.2d at 500.

■ While an employer commits an unfair labor practice by unilaterally changing most mandatory subjects of bargaining, there are some terms and conditions of employment which do not automatically survive the expiration of a collective-bargaining agreement. *Litton*, — U.S. at —, 111 S.Ct. at 2221. Obligations permitted only by the express terms of a collective-bargaining agreement, such as union security and union dues check-off provisions, and obligations which involve statutory rights, such as no-strike clauses, do not automatically survive the expiration of a collective-bargaining agreement. *Id.* (citations omitted).

■ Similarly, an arbitration clause will not *"by operation of the NLRA"* continue in effect after the expiration of a collective-bargaining agreement. *Litton*, — U.S. at —, 111 S.Ct. at 2221 (construing *N.L.R.B. v. Katz, supra;* and *Hilton–Davis Chemical Co.*, 185 N.L.R.B. 241, 242 (1970)) (emphasis added). Arbitration is a matter of contract, and in the absence of a contract provision which eliminates a hia-

tus between the expiration of the old contract and the execution of the new contract, "an expired contract has by its own terms released all its parties from their respective contractual obligations, except obligations already fixed under the contract but as yet unsatisfied." *Litton*, — U.S. at —, 111 S.Ct. at 2225.

■ Section 1–04 of the Contract eliminates the hiatus between the expiration of the Contract and the execution of a new collective-bargaining agreement. This Contract provision specifically requires the parties to maintain the conditions prevailing at the expiration of the Contract until they either bargain to impasse or reach a new agreement. The Contract does not define "conditions prevailing at the expiration," which can reasonably be construed to mean either "terms and conditions *under this agreement*", or "terms and conditions of *employment*". Even if, as the Post Tribune argues, this provision is designed to ensure that the parties maintain the terms and conditions of employment prevailing at expiration until a new agreement is reached, "terms and conditions of employment" include wages, hours, arrangements for arbitration of disputes, and other mandatory subjects of bargaining. Furthermore, this section requires the parties to maintain these terms and conditions of employment as a matter of *contract* and not solely by operation of the NLRA. Thus, section 1–04 may reasonably be read to extend the parties' obligations under the expired Contract, including the duty to arbitrate, during negotiations for a new collective-bargaining agreement.

■ By including in their Contract an arbitration clause which applies to all disputes (except those specifically excepted) which concern an interpretation or alleged violation of any provision of that Contract, "the parties clearly express their preference for an arbitral, rather than a judicial[,] interpretation of their obligations under the collective-bargaining agreement." *Nolde Bros.*, 430 U.S. at 253, 97 S.Ct. at 1073. As the Court held in *Nolde Bros.*, "[w]hile the termination of the collective-bargaining agreement works an obvious change in the

relationship between employer and union, it would have little impact on many of the considerations behind their decision to resolve their contractual differences through arbitration." 430 U.S. at 255, 97 S.Ct. at 1073. Moreover, the parties drafted section 1–04 and their broad arbitration clause ".against a backdrop of well-established federal labor policy favoring arbitration as the means of resolving disputes over the meaning and effect of collective bargaining agreements." *Id.* Thus, even though the facts which gave rise to the post-contract grievance in this case occurred after the expiration of the Contract but during the period in which "conditions prevailing at the expiration" were required to be continued under the terms of the expired Contract, the strong presumption favoring arbitrability applies in this case. *See Nolde Bros.*, 430 U.S. at 255, 97 S.Ct. at 1073 (the Court applied the presumption favoring arbitrability to post-contract grievances arising under the terms of an expired collective-bargaining agreement which contained an arbitration clause which applied to all disputes arising under the terms of the expired contract.)

In this case, neither the arbitration clause nor any other provision of the expired Contract specifically excludes post-contract grievances from arbitration. As in *Nolde Bros.* and *AT & T Technologies*, the parties agreed to arbitrate "all disputes which may arise as to the interpretation to be placed upon any clause of the agreement, except as provided otherwise herein, or alleged violations thereof, which cannot be settled otherwise[,]" and excluded only "local union laws not affecting wages, hours, or working conditions and the General Laws of the International Typographical Union" from arbitration. (See Contract, p. 21, sections 25–02, 25–05.) As the Court held in *Nolde Bros.*,

> Even though the parties could have so provided, there is nothing in the arbitration clause that expressly excludes from its operation a dispute which arises under the contract but which is based on events that occur after its termination. The contract's silence, of course, does not establish the parties' intent to resolve post-termination grievances by arbitration. But in the absence of some contrary indication, there are strong reasons to conclude that the parties did not intend their arbitration duties to terminate with the contract.

430 U.S. at 253, 254, 97 S.Ct. at 1072, 1073.

The conduct of the parties indicates that while they dispute the enforceability of the arbitration clause in their expired Contract, they intended their duties under the expired Contract to continue until they either entered into a replacement agreement or bargained to impasse. In a January 4, 1991, letter to Post Tribune Chapel Chairman Bernard Martin from Pre–Press Manager Bud Johnston regarding the Post Tribune's purchase of a new scanner, Mr. Johnston stated that he did not believe that the Post Tribune was obligated to give the Union notice pursuant to section 21–01 of the Contract because the machine was of a type already being used. (See Exhibit C, filed April 12, 1991, in support of the Union's Motion for Summary Judgment). Mr. Johnston did not state that notice was not given because the Contract had expired, but because he believed that in accordance with section 21–01 of the Contract, notice was not required. Similarly, when the Union first raised the issue of a post-contract grievance, the parties submitted the matter to the Joint Standing Committee in accordance with the arbitration clause in section 25–02 of the Contract. (See Stipulations, p. 4, ¶ 15.) When no resolution of the grievances occurred in the Joint Standing Committee meeting and the Union demanded arbitration of this grievance, the Post Tribune refused arbitration on the ground that the grievance arose after the expiration of the Contract. (See Stipulations, p. 4, ¶¶ 16–17.)

The arbitration clause of the expired Contract, which applies to all disputes concerning an interpretation or alleged violation of any Contract provision not specifically excepted, affords a basis for concluding that the parties intended to arbitrate all

grievances arising out of the contractual relationship.[1] *Nolde Bros.*, 430 U.S. at 253–254, 97 S.Ct. at 1072–1073. The post-contract grievance involves either differing interpretations or an alleged violation of the parties' obligations under the Contract, presumably pursuant to sections 21–01 and 21–02, and also appears to concern wages and hours. No provision of the Contract excludes post-contract grievances, section 1–04, section 21–01, or section 21–02 from arbitration, and the "Post Tribune does not contest whether the arbitration clause, if it were in effect, would cover the underlying grievance." (See Plaintiff's Answer Brief to Defendant's Brief in Support of Motion for Summary Judgment, filed May 1, 1991, p. 10.) Section 1–04 extends the parties' obligations to maintain the terms and conditions of employment prevailing at the expiration, which include, among other things, wages, hours, and arrangements for the arbitration of disputes, until the parties either bargain to impasse or execute a new contract. Therefore, in keeping with the terms of their agreement as embodied in their Contract, the parties must resolve the Union's post-contract grievance in accordance with the arbitration clause in Article Seven of the Contract.

CONCLUSION

Based on the foregoing, this court FINDS that there are no genuine issues of material fact and all issues of law must be resolved in favor of ordering arbitration of the Union's post-contract grievance. The Post Tribune's Motion for Summary Judgment, filed August 8, 1990, and Motion for Entry of Judgment by Default, filed August 22, 1990, are GRANTED IN PART and DENIED IN PART; the Post Tribune's Motion for Summary Judgment on Count II of the Complaint is DENIED; and the Union's Motion for Summary Judgment is GRANTED. Additionally, the Union's Motion for Leave to File a Counterclaim

and motions for protective orders are SUMMARILY DENIED.

---

1. The only matters excluded from arbitration by Article Seven of the Contract are grievances involving local union laws not affected wages, hours, or working conditions and the General Laws of the International Typographical Union. (See Contract, p. 21, section 25–05.)